## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OKLAHOMA

|  |  |  |
|---|---|---|
| 1) SUN MOUNTAIN, LLC, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | Civil Action No. 19-cv-105-TCK-FHM |
| | : | |
| 1) TULSA INSPECTION RESOURCES – PUC, LLC, | : | **Jury Trial Demanded** |
| | : | |
| Defendant. | : | |
| | : | |

## COMPLAINT

Plaintiff Sun Mountain, LLC ("***Sun Mountain***" or "***Plaintiff***"), by its attorneys Reed Smith LLP, for its Complaint against Tulsa Inspection Resources – PUC, LLC ("***TIR***" or "***Defendant***"), alleges as follows:

## NATURE OF ACTION

1.      This is an action to recover approximately $3.5 million that TIR has wrongfully refused to pay to Sun Mountain for work and services performed by Sun Mountain employees for, at the request or on behalf of TIR.

2.      In or around March 2017, TIR entered into a subcontract relationship with Sun Mountain pursuant to which the parties agreed that Sun Mountain employees would perform work and services on TIR projects for Pacific Gas & Electric ("PG&E"). In exchange, TIR would remit payment to Sun Mountain for the work and services within thirty (30) days after the invoices were submitted by Sun Mountain and the work and services were approved by TIR.

3.      For over a year-and-a-half, the parties enjoyed a mutually beneficial relationship. During that period, Sun Mountain benefitted because TIR satisfied its payment obligations to

Sun Mountain in relation to 38 invoices for work and services performed by Sun Mountain for, at the request or on behalf of TIR based on the agreed upon processes and rates.  In turn, TIR benefitted because it received work and services from Sun Mountain's employees and expanded the scope of the work it was providing under its contract with PG&E as a result of its relationship with a California-certified Disabled Veterans Business Enterprise).  In addition, TIR  received payments from PG&E for the work and services performed by Sun Mountain with an additional "margin" reflecting the billing rates agreed upon between PG&E and TIR.

4.      Indeed, on December 7, 2017, Jim Crawford, a Senior Client Representative for TIR, sent a testimonial to Sun Mountain in which he stated that:

> Tulsa Inspection Resources relationship with Sun Mountain start in late 2016 and has grown everyday into a great working relationship.  Sun Mountain is always willing to talk about any issues we have and offer solutions that make it workable for both parties.  They have taken the time to learn our side of the business and openly discuss this with others.  It is obvious the services they provide are of value to our client as we have tripled in capacity and the indication is they will continue to grow.  This is based not only on service but presenting themselves with a certain set of morals, ethics and a knowledge level to the client, which says we stand behind what we say we will do.  From my personal perspective they always go above and beyond to make sure the task or project is completed better than expected.  Great relationship that I see lasting for many years to come.

5.      Based on the parties' subcontract relationship and long course of dealing, during the period between July and December 2018, Sun Mountain paid its employees to perform work and services for, at the request or on behalf of TIR and subsequently submitted invoices to TIR with the expectation that those invoices would be paid within thirty (30) days.

6.      Although TIR has made partial payments to Sun Mountain in relation to some of the invoices for the work and services performed by Sun Mountain's employees at its request or on its behalf, TIR has wrongfully refused to remit payment in full for the outstanding invoices. Instead, in a letter dated February 13, 2019, TIR acknowledged the parties' course of dealing and

the fact that Sun Mountain had performed work and services at its request or on its behalf, but inexplicably asserted that it would not remit payment of the outstanding invoices and, instead, would only pay Sun Mountain once it received payment from PG&E.

7.     As a result of TIR's refusal to pay the invoices, each of which has been outstanding for longer than thirty (30) days, in accordance with the parties' subcontract and long course of dealing, Sun Mountain has been wrongfully deprived of payments totaling at least $3,495,284.92 and has been forced to take out loans with high interest rates to pay its employees who are performing work and services for TIR.

8.     Accordingly, Sun Mountain has brought this action for breach of contract, promissory estoppel/ detrimental reliance, and unjust enrichment/ quantum meruit to recover the outstanding past due amount of $3,495,284.92 for work and services performed by its employees for, the request or on behalf of TIR.

## PARTIES

9.     Plaintiff Sun Mountain, LLC is a limited liability company organized under the laws of Colorado with its principal place of business at 1475 North Broadway Avenue, Suite 430, Walnut Creek, CA 94596.  Sun Mountain is a licensed California contractor and a California-certified Disabled Veterans Business Enterprise.  Since it was founded in 2014, Sun Mountain has been providing utility and infrastructure project services, including expertise in program and project delivery, civil engineering services, construction management, inspection, and project controls.

10.     Defendant Tulsa Inspection Resources – PUC, LLC is a limited liability company organized under the laws of Delaware with its principal place of business at 5727 South Lewis, Suite 300, Tulsa, Oklahoma 74105. TIR is a subsidiary of Tulsa Inspection Resources, LLC,

which is a business unit of Cypress Energy Partners, L.P., a Delaware limited partnership that is

traded on the New York Stock Exchange (using the symbol CELP).  TIR provides, *inter alia*,

independent pipeline inspection and integrity services to producers, public utility companies, and

pipeline companies, including PG&E.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 because

it is a civil action in which the matter in controversy exceeds the sum or value of $75,000,

exclusive of interest and costs, and is between citizens of different States.

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because TIR resides in

this district, and a substantial part of the events giving rise to the claim occurred in this district.

13.     In addition, this action arises, in part, out of a written subcontract pursuant to

which the parties agreed that Tulsa County, Oklahoma is the proper place, venue and jurisdiction

for any dispute, and both parties are subject to and consent to this jurisdiction.

## FACTUAL BACKGROUND

A.     **CPUC and PG&E Supplier Diversity Programs**

14.     In or around 1986, the California Legislature passed Assembly Bill 3678, which

required California regulated utilities with gross annual revenues exceeding $25 million to

establish a program to award a fair proportion of total utility contracts and subcontracts to

diverse business enterprises.  In response, the California Public Utilities Company ("CPUC")

issued General Order 156 ("GO 156") to implement the statutes and set the framework and

guidelines for a Supplier Diversity Program.

15.     In the current version of GO 156, the CPUC encourages utilities to procure

21.5% of goods and services from diverse business enterprises and, more specifically, to procure

15% from minority-business enterprises ("MBE"), 5% from women-business enterprises

("WBE"), and 1.5% from disabled veteran-owned enterprises ("DVBE").  GO 156 also requires

utilities to "establish and maintain a subcontracting program for the purpose of encouraging its

prime contractors to utilize WMDVLGBTE subcontractors."  In particular, it provides that:

> Each utility shall encourage and assist its prime contractors to develop plans to
> increase the utilization of WMDVLGBTEs as subcontractors.  Prime contractors
> shall be encouraged to submit to the utility plans that include goals for the
> utilization of WMDVLGBTEs as subcontractors.  These plans may be
> incorporated into the contract between the utility and the prime contractor.  The
> prime contractor may submit periodic reports on its compliance with the plan to
> the utility.

16.     In accordance with GO 156, PG&E established a Supplier Diversity Program and

"makes it a priority to bring diverse business enterprises … into [its] supply chain."[1]

17.     In its Supplier Diversity 2016 Annual Report, PG&E touted the fact that

"[i]n 2016, PG&E spent $2.85 billion with WMDVLGBTBEs, or 44.4 percent of its total

procurement."[2]  PG&E also touted the fact that "[i]n 2016, PG&E's supplier diversity

subcontracting performance increased, with its prime suppliers reporting more than $679.1

million in spending with WMDVLGBTBEs, representing a 9.8 percent increase over 2015."

18.     In accordance with its priority of bringing diverse business enterprises into its

supply chain, PG&E has "requested that prime suppliers establish and execute their own supplier

diversity programs, develop supplier diversity plans that set goals and describe internal best

practices to increase WMDVLGBTBE participation and accurately report to PG&E the monthly

results of their subcontracting efforts with WMDVLGBTBES."  Moreover, "[a]t the end of 2016,

and for the sixth year in a row, PG&E hired a third-party firm to perform its annual subcontractor

---

[1] See PG&E website:
   http://www.pgecorp.com/corp_responsibility/reports/2017/cu08_supplier_diversity.html

[2] See PG&E Supplier Diversity 2016 Annual Report and 2017 Annual Plan:
   https://www.pge.com/pge_global/common/pdfs/for-our-business-partners/purchasing-
   program/suppliers/supply-chain-responsibility/2017-Annual-Report.pdf

reporting and payments audit of its Prime Supplier Program to ensure accurate WMDVLGBTBE reporting from prime suppliers."

19.     In addition, in its Supplier Diversity 2017 Annual Plan, PG&E emphasized that it would "continue to encourage prime suppliers to subcontract with small and diverse businesses across all product and service categories, and lines of businesses."   PG&E also emphasized that it would "conduct the annual audit of its diverse subcontracting spend to assess the accuracy and compliance of reported subcontractor payments."

**B.     TIR Enters Into a Subcontract with Sun Mountain**

20.     As a result of PG&E's efforts to encourage its prime contractors to subcontract with diverse business enterprises, TIR entered into a subcontract with Sun Mountain, which is a California-certified DVBE with a highly qualified staff comprised of many former or current military servicemen and women.

21.     Accordingly, on or around March 22, 2017, TIR and Sun Mountain executed the TIR Subcontractor Terms and Conditions (the "Subcontract Agreement"), which apply to "work or services or any act performed by [Sun Mountain] for, at the request or on behalf of [TIR]." A copy of the Subcontract Agreement is annexed hereto as Exhibit A.

22.     Pursuant to the terms of the Subcontract Agreement, Sun Mountain agreed to perform "work and services . . . more specifically described in a written request from [TIR]." (Ex. A at § 1.)  Sun Mountain further agreed that it would "submit invoices no later than sixty (60) days after the date the Services are performed." (*Id.* at § 3.)

23.     In exchange for the work and services performed by Sun Mountain at its request or on its behalf, TIR agreed that for "Time and Materials projects, [Sun Mountain] will be paid

within thirty (30) days after an invoice is submitted to and the Services approved by [TIR]." (*See id.*)

24.     The parties also agreed that the Subcontract Agreement "shall be construed in accordance with the laws of the State of Oklahoma" and that "Tulsa County, Oklahoma is the proper place, venue and jurisdiction for any dispute, and both parties are subject to and consent to this jurisdiction."  (Ex. A at § 21.)

25.     On or around April 24, 2017, shortly after the parties entered into the subcontract, Jim Crawford of TIR sent an email to Sun Mountain confirming the importance of TIR's relationship with Sun Mountain to TIR's relationship to PG&E.  Specifically, he wrote that he "[w]ould like to try and get together" and that the "[m]ain thought of getting together is if we are ever questioned by PG&E about our involvement with you we can honestly say we have quarterly meetings or something."

## C.     The Parties' Course of Dealing

26.     Although the Subcontract Agreement refers to "Work Orders" in the form attached thereto as an Exhibit, the parties agreed to a process by which Sun Mountain performed work and services for, at the request or on behalf of TIR, and the rates that TIR would pay for the work and services performed by Sun Mountain.

27.     From the inception of the relationship, the process adopted by the parties was that PG&E and/or TIR would inform Sun Mountain of their hiring needs for TIR projects and Sun Mountain would advise whether it had any employees available with the necessary qualifications.  By way of example:

- On October 18, 2017, PG&E sent an email to TIR advising them that they were "looking for 2 Field Engineers to report to Stockton," explaining the job description, and requesting "candidate resumes for review, asap."

- Thereafter, TIR forwarded the email to Sun Mountain and asked whether they knew of "anyone that needs work for a couple [o]f months that would fit the bill."

- Sun Mountain replied that they were "working on this," they would "need to gather resumes for a couple of days and start shooting them over" and asked permission to reach out directly to PG&E to request additional information about the roles.

- TIR replied that it "[s]ound[ed] like a great plan" and gave Sun Mountain permission to "reach out to [PG&E] at [their] convenience."

28. When a decision was made to hire a Sun Mountain employee, PG&E entered the information in its Unifier system and sent TIR a "Transmittal" with the name of the TIR project, the name of the employee, and a description of the employee's "Work Classification," "Billing Classification," and the "Effective Date." Thereafter, TIR forwarded the "Transmittal" to Sun Mountain and facilitated the onboarding. For example:

- On February 15, 2018, PG&E sent TIR a "Transmittal" through Unifier which states that the "Project Name" is "NETS – Tulsa," the employee's "Classification" is "Construction Specialist," and the "Effective Date" is "Wed. 1/24/2018."

- Thereafter, on February 19, 2018, TIR forwarded the "Transmittal" to Sun Mountain.

29. From the outset of the relationship, TIR agreed to pay the following rates for work and services performed by Sun Mountain employees:

- Construction Specialist I: $83/ hour
- Construction Specialist II: $95/ hour
- Construction Specialist III: $113.92/ hour

30. Thereafter, in or around March or April 2018, the parties negotiated a reduction of the rates for "Construction Specialist II" and "Construction Specialist III" for four billing cycles (i.e., work and services performed by Sun Mountain employees on TIR projects for PG&E during the time period from March to June 2018) in exchange for TIR agreeing to remit payment

to Sun Mountain within twenty (20) days of when invoices were submitted rather than the thirty (30) days specified in the Subcontract Agreement.  Under this temporary arrangement, TIR agreed to pay the following rates for work and services performed by Sun Mountain employees:

- Construction Specialist I: $83/ hour
- Construction Specialist II: $92/ hour
- Construction Specialist III: $110/ hour

31.     Thereafter, on or around October 31, 2018, TIR sent Sun Mountain a "2018/2019 Classification and Rate Adjustment" setting out the billing rates that TIR agreed to pay for work and services performed by Sun Mountain on TIR projects for PG&E during the period from October 1, 2018 to December 31, 2019.  These billing rates were based on the relevant Sun Mountain employees' "Classification" and "Years of Job-related Experience."

32.     After performing work and services for TIR, Sun Mountain sent invoices to TIR with the names of each of the employees working on TIR projects, the number of hours worked or reimbursable expense items, and the billing or reimbursement rates agreed upon between TIR and Sun Mountain based on the employees' "Classification" and "Years of Job-related Experience."  These invoices were always submitted within sixty (60) days of when Sun Mountain performed the work and services were for TIR and clearly stated that payment was due within thirty (30) days (with the exception of the invoices for work and services performed in March to June 2018 which stated that payment was due within twenty (20) days of when the invoices were submitted).

33.     Upon information and belief, TIR subsequently sent its own invoices to PG&E for the work and services performed by Sun Mountain on TIR projects with a "margin" reflecting the billing rates agreed upon between PG&E and TIR.  In addition, upon information and belief,

TIR included the work and services performed by Sun Mountain on monthly reports to PG&E

regarding its efforts to subcontract with diverse business enterprises.

34.     For over a year-and-a-half, TIR satisfied its payment obligations to Sun Mountain

in relation to 38 invoices for work and services performed by Sun Mountain for, at the request or

on behalf of TIR based on the practices described above.

35.     The table below sets out a complete list of the 38 invoices submitted by

Sun Mountain to TIR with the invoice number, invoice amount, date of invoice, due date for

payment, and amount paid:

| Invoice No. | Invoice Amt. | Date of Invoice | Due Date for Payment | Amount Paid |
| --- | --- | --- | --- | --- |
| F204 | $79,873.40 | 04/04/2017 | 5/04/2017 | $79,873.40 |
| F205 | $107,308.40 | 04/04/2017 | 5/04/2017 | $107,308.40 |
| F206 | $2,872.30 | 04/04/2017 | 5/04/2017 | $2,872.30 |
| F207 | $5,689.50 | 04/04/2017 | 5/04/2017 | $5,689.50 |
| F213 | $101,288.76 | 5/09/2017 | 6/08/2017 | $101,288.76 |
| F214 | $5,344.83 | 5/09/2017 | 6/08/2017 | $5,344.83 |
| F220 | $6,688.59 | 6/08/2017 | 7/08/2017 | $6,688.59 |
| F221 | $112,607.48 | 6/8/2017 | 7/8/2017 | $112,607.48 |
| F222 | $94,775.20 | 6/28/2017 | 7/28/2017 | $94,775.20 |
| F223 | $4,716.63 | 6/28/2017 | 7/28/2017 | $4,716.63 |
| F228 | $157,273.60 | 8/3/2017 | 9/02/2017 | $157,273.60 |
| F229 | $11,734.18 | 8/03/2017 | 9/02/17 | $11,734.18 |
| F238 | $114,810.88 | 9/06/2017 | 10/06/2017 | $114,810.88 |
| F239 | $87,340.96 | 9/06/2017 | 10/06/2017 | $87,340.96 |
| F240 | $9,203.30 | 9/06/2017 | 10/06/2017 | $9,203.30 |
| F241 | $15,789.81 | 10/03/2017 | 11/02/2017 | $15,789.81 |
| F242 | $316,775.02 | 10/03/2017 | 11/02/2017 | $316,775.02 |
| F251 | $534, 282.40 | 11/08/2017 | 12/08/2017 | $534, 282.40 |
| F252 | $26,101.18 | 11/08/2017 | 12/08/2017 | $26,101.18 |
| F253 | $435,154.45 | 11/28/2017 | 12/28/2017 | $435,154.45 |
| F254 | $21,148.33 | 11/28/2017 | 12/28/2017 | $21,148.33 |
| F257 | $536,495.31 | 01/08/2018 | 02/07/2018 | $536,495.31 |
| F258 | $28,333.72 | 01/08/2018 | 02/07/2018 | $28,333.72 |
| F263 | $416,909.99 | 02/05/2018 | 03/07/2018 | $416,909.99 |
| F264 | $18,960.23 | 02/05/2018 | 03/07/2018 | $18,960.23 |
| F265 | $519,113.32 | 03/02/18 | 04/01/18 | $519,113.32 |
| F266 | $23,630.27 | 03/02/18 | 04/01/2018 | $23,630.27 |

| F271 | $529,367.00 | 04/03/2018 | 05/03/2018 | $529,367.00 |
| F272 | $25,270.36 | 04/03/2018 | 05/03/2018 | $25,270.36 |
| F275 | $777,265.00 | 05/07/2018 | 05/27/2018 | $777,265.00 |
| F276 | $41,171.59 | 05/07/2018 | 06/06/2018 | $41,171.59 |
| F278 | $506,097.00 | 06/05/2018 | 06/25/2018 | $506,097.00 |
| F279 | $26,241.46 | 06/05/2018 | 07/05/2018 | $26,241.46 |
| F282 | $123,428.00 | 06/12/2018 | 07/02/2018 | $123,428.00 |
| F283 | $11,396.57 | 06/12/2018 | 07/02/2018 | $11,396.57 |
| F284 | $529,813.00 | 06/28/2018 | 07/18/2018 | $529,813.00 |
| F285 | $33,984.84 | 06/28/2018 | 07/28/2018 | $33,984.84 |
| F288 | $91,850.00 | 07/05/2018 | 07/25/2018 | $91,850.00 |

36.     Although TIR sometimes remitted payment slightly longer than thirty (30) days from when the invoices were submitted, this was principally due to errors in the time entries submitted by Sun Mountain employees that led to delays in obtaining approval for the work and services performed by Sun Mountain for TIR.

**D.      TIR Breaches the Subcontract Agreement by Failing to Pay Sun Mountain Invoices**

37.     In accordance with the Subcontract Agreement and the parties' course of dealing, during the period between July and December 2018, Sun Mountain employees performed work and services on Time and Materials projects for, at the request or on behalf of TIR.

38.     Thereafter, during the period between August 2018 and January 2019, Sun Mountain submitted invoices to TIR reflecting the names of the employees working on TIR projects, the number of hours worked or reimbursable expense items, and the agreed upon billing or reimbursement rates, including Invoice Nos. F290, F291, F293, F294, F295, F296, F297, F298, F301, F302, F307, F308, and F310 (collectively, the "Outstanding Invoices").

39.     Each of the Outstanding Invoices was submitted within sixty (60) days of when the work and services were performed by Sun Mountain for, at the request or on behalf of TIR and clearly stated that payment was due within thirty (30) days.  A copy of each of the Outstanding Invoices is annexed hereto as Exhibit B.

40.     During the period between September 2018 and January 2019, TIR made partial payments to Sun Mountain in relation to certain of the Outstanding Invoices, including Invoice Nos. F290, F291, F293, F294, F295, and F296, and did not raise concerns regarding the absence of formal executed "Work Orders" or the terms relating to due dates for payment.

41.     However, TIR has failed to remit payment in full to Sun Mountain for the outstanding amounts due in relation to Invoice Nos. F290, F291, F293, F294, F295, and F296 and has failed to remit any payment at all to Sun Mountain for the outstanding amounts due in relation to Invoice Nos. F297, F298, F301, F302, F307, F308, and F310.

42.     The table below sets out a complete list of the Outstanding Invoices submitted by Sun Mountain to TIR with the invoice number, invoice amount, date of invoice, due date for payment, amount paid, and balance:

| Invoice No. | Invoice Amt. | Date of Invoice | Due Date for Payment | Amount Paid | Balance |
|---|---|---|---|---|---|
| F290 | $881,380.16 | 08/06/2018 | 09/05/2018 | $849,778.52 | $31,601.64 |
| F291 | $43,103.14 | 08/06/2018 | 09/05/2018 | $40,390.36 | $2,712.78 |
| F293 | $746,357.56 | 08/31/2018 | 09/30/2018 | $671,412.84 | $74,944.72 |
| F294 | $34,728.54 | 08/31/18 | 09/30/18 | $32,056.88 | $2,671.66 |
| F295 | $875,337.94 | 10/05/18 | 11/04/18 | $81,510.00 | $793,827.94 |
| F296 | $38,293.02 | 10/05/18 | 11/04/18 | $1,649.73 | $36,643.29 |
| F297 | $702,707.00 | 11/02/18 | 12/02/18 | N/A | $702,707.00 |
| F298 | $27,192.57 | 11/02/18 | 12/02/18 | N/A | $27,192.57 |
| F301 | $787,683.50 | 11/30/18 | 12/20/18 | N/A | $787,683.50 |
| F302 | $26,452.59 | 11/30/18 | 12/20/18 | N/A | $26,452.59 |
| F307 | $892,273.00 | 01/09/19 | 02/08/19 | N/A | $892,273.00 |
| F308 | $28,956.23 | 01/09/19 | 02/08/19 | N/A | $28,956.23 |
| F310 | $87,618.00 | 01/18/19 | 02/17/19 | N/A | $87,618.00 |

43.     Based on the foregoing, TIR has breached its obligation under the Subcontract Agreement to remit payment in full for the Outstanding Invoices in the total amount of $3,495,284.92, each of which was submitted within sixty (60) days of when Sun Mountain

performed work and services for, at the request or on behalf of TIR and each of which has been outstanding for longer than thirty (30) days.

**E.     Sun Mountain Demands Payment of Outstanding Invoices**

44.     As each of the Outstanding Invoices came due, Sun Mountain repeatedly demanded payment, but TIR repeatedly failed to remit payment in full.  Accordingly, Sun Mountain was forced to retain counsel to demand payment or else initiate legal action to recover the outstanding past due balance.

45.     On or around January 24, 2019, Sun Mountain sent a letter to TIR demanding payment for outstanding invoices and explaining that absent payment Sun Mountain would be "forced to terminate 34 employees who are performing services in connection with the [Subcontract] Agreement."

46.     On or around January 30, 2019, TIR sent a letter to Sun Mountain requesting "all Work Orders and any other documents that … support Sun Mountain's demand for payment."

47.     On or around February 8, 2019, Sun Mountain sent a letter to TIR explaining the parties' course of dealing and attaching numerous documents supporting Sun Mountain's demand for payment, including:

- a compilation of the then past due invoices, each of which sets forth the date of the invoice, the date on which payment was due, the names of the Sun Mountain employees working on TIR projects, the number of hours worked or reimbursable expense items, the agreed upon billing or reimbursement rates, the payments received from Tulsa, and the total outstanding amounts due;

- a list of the billing rates agreed upon between TIR and Sun Mountain for the period from October 1, 2018 to December 31, 2019 based upon the employees' "Classification" and "Years of Job-related Experience";

- a sample of correspondence between and among PG&E, TIR and Sun Mountain which illustrates the process by which PG&E and/or TIR would inform Sun Mountain of their hiring needs for TIR projects and

Sun Mountain would advise whether it had any employees available with
the necessary qualifications;

- a compilation of correspondence and "Transmittals" that TIR received
from PG&E and forwarded to Sun Mountain in relation to the hiring of the
Sun Mountain employees whose work and services is reflected in the then
past due invoices; and

- a sample of correspondence between Sun Mountain and TIR reflecting the
process by which TIR would assist with facilitating the Veriforce training
and onboarding of Sun Mountain employees.

48.     On or around February 13, 2019, TIR sent a letter to Sun Mountain

acknowledging the course of dealing pursuant to which Sun Mountain performed work and

services for, at the request or on behalf of TIR, but insisting that "the business deal and course of

dealings between the parties clearly demonstrates that the parties agreed and understood that TIR

would only pay Sun Mountain after TIR received payment from [PG&E]."  The letter further

explained that "TIR has also not received payment from PG&E for the pre-bankruptcy services

at issue (nor has it received payment for millions of dollars owed by PG&E on account of pre-

bankruptcy services performed by TIR …)."  The letter further proposed that TIR would

"continue to work with PG&E to receive payment in full, and remit amounts owing to

Sun Mountain after recovering the same."

49.     Notwithstanding TIR's self-serving assertion, the business deal reflected in the

Subcontract Agreement clearly demonstrates that the parties agreed that for "Time and Materials

projects, [Sun Mountain] will be paid within thirty (30) days after an invoice is submitted to and

the Services approved by [TIR]."  (Ex. A at § 3.)  Further, the parties' course of dealing clearly

demonstrates that prior to this dispute, TIR consistently remitted payment to Sun Mountain

within approximately thirty (30) days after invoices were submitted, Sun Mountain never

acquiesced to delays, and that any such delays were principally due to errors in the time entries

submitted by Sun Mountain employees that led to delays in obtaining approval for the work and services performed by Sun Mountain for TIR.

50.     As a result of TIR's failure to remit timely payment after the Outstanding Invoices were submitted by Sun Mountain and the work and services approved by TIR, as required by the Subcontract Agreement and the parties' course of dealing, Sun Mountain has been forced to take out loans with high interest rates to finance its payroll obligations to its employees who are performing work and services for, at the request or on behalf of TIR.

## COUNT I
## Breach of Contract

51.     Sun Mountain repeats and realleges each and every allegation in the preceding paragraphs of this Complaint as though fully set forth herein.

52.     As set forth above, on or around March 22, 2017, TIR and Sun Mountain executed the Subcontract Agreement, which applies to work and services performed by Sun Mountain for, at the request or on behalf of TIR.

53.     Pursuant to the terms of the Subcontract Agreement, Sun Mountain agreed to perform work and services pursuant to written requests from TIR and to submit invoices no later than sixty (60) days after the work and services are performed.

54.     In exchange for the work and services performed by Sun Mountain at its request or on its behalf, TIR agreed that Sun Mountain will be paid within thirty (30) days after invoices were submitted and the work and services were approved by TIR.

55.     Although the Subcontract Agreement refers to "Work Orders" in the form attached thereto as an Exhibit, the parties agreed on a process by which Sun Mountain would perform work and services for, at the request or on behalf of TIR and the rates that TIR would pay for the work and services performed by Sun Mountain.

56.     During the period that the Subcontract Agreement was in effect, PG&E and TIR sent numerous emails and "Transmittals" which constituted written requests for Sun Mountain employees to perform work and services for, at the request or on behalf of TIR.

57.     In accordance with the Subcontract Agreement and the parties' course of dealing, during the period between July and December 2018, Sun Mountain employees performed work and services on numerous Time and Materials projects for, at the request, or on behalf of TIR.

58.     Thereafter, during the period between August 2018 and January 2019, Sun Mountain submitted invoices to TIR reflecting the names of the Sun Mountain employees working on TIR projects, the number of hours worked or reimbursable expense items, and the agreed upon billing or reimbursement rates, including Invoice Nos. F290, F291, F293, F294, F295, F296, F297, F298, F301, F302, F307, F308, and F310.

59.     Each of the Outstanding Invoices was submitted within sixty (60) days of when the work and services were performed by Sun Mountain for, at the request, or on behalf of TIR and clearly stated that payment was due within thirty (30) days.

60.     During the period between September 2018 and January 2019, TIR made partial payments to Sun Mountain in relation to certain of the Outstanding Invoices, including Invoice Nos. F290, F291, F293, F294, F295, and F296, and did not raise concerns regarding the absence of formal executed "Work Orders" or the terms relating to due dates for payment.

61.     However, despite the terms of the Subcontract Agreement, which provide that for "Time and Materials projects, [Sun Mountain] will be paid within thirty (30) days after an invoice is submitted and the Services approved," TIR has failed to remit payment in full to Sun Mountain for the outstanding amounts due in relation to Invoice Nos. F290, F291, F293,

F294, F295, and F296 and has failed to remit any payment to Sun Mountain for the outstanding amounts due in relation to Invoice Nos. F297, F298, F301, F302, F307, F308, and F310.

62.     In a letter dated February 13, 2019, TIR wrote that it has not remitted payment to Sun Mountain because it purportedly has not received payment from PG&E and proposed that it would "continue to work with PG&E to receive payment in full, and remit amounts owing to Sun Mountain after recording the same."

63.     TIR has breached the Subcontract Agreement by failing to fully satisfy its obligations to remit payment in full to Sun Mountain for the outstanding amounts due in relation to the Outstanding Invoices within thirty (30) days after they were submitted and the work and services reflected therein were approved by TIR.

64.     As a result of that breach, Sun Mountain has been damaged because it has been deprived of payments in the aggregate amount of $3,495,284.92 and it has been forced to take out loans with high interest rates to finance its payroll obligations to its employees who are performing work and services for, at the request or on behalf of TIR.

65.     By reason of the foregoing, Sun Mountain is entitled to damages in an amount to be determined at trial, but believed to be no less than $3,495,284.92.

## COUNT II
### Promissory Estoppel/ Detrimental Reliance

66.     Sun Mountain repeats and realleges each and every allegation in the preceding paragraphs of this Complaint as though fully set forth herein.

67.      As set forth above, beginning in or around March 2017, PG&E and TIR sent numerous emails and "Transmittals" which constituted written requests for Sun Mountain employees to perform work and services for, at the request or on behalf of TIR.

68.     In exchange for the work and services performed by Sun Mountain at its request or on its behalf, TIR made a clear and unambiguous promise that it would remit payment to Sun Mountain within thirty (30) days after invoices were submitted by Sun Mountain and the work and services were approved by TIR.

69.     For over a year and a half, TIR satisfied its payment obligations to Sun Mountain in relation to 38 invoices for work and services performed by Sun Mountain for, at the request or on behalf of TIR pursuant to emails and "Transmittals" from PG&E and TIR.

70.     Based on the foregoing, it was foreseeable to TIR that Sun Mountain would rely on its promise to remit payment to Sun Mountain within thirty (30) days after invoices were submitted by Sun Mountain and the work and services were approved by TIR.

71.     In reliance on the promise made by TIR and the parties' course of dealing, during the period between July and December 2018, Sun Mountain paid its employees to perform work and services on Time and Materials projects for, at the request or on behalf of TIR.

72.     Thereafter, during the period between August 2018 and January 2019, Sun Mountain submitted invoices to TIR reflecting the names of the Sun Mountain employees working on TIR projects, the number of hours worked or reimbursable expense items, and the agreed upon billing or reimbursement rates, including Invoice Nos. F290, F291, F293, F294, F295, F296, F297, F298, F301, F302, F307, F308, and F310.

73.     Each of the Outstanding Invoices was submitted within sixty (60) days of when the work and services were performed by Sun Mountain for, at the request, or on behalf of TIR and clearly stated that payment was due within thirty (30) days.

74.     During the period between September 2018 and January 2019, TIR made partial payments to Sun Mountain in relation to certain of the Outstanding Invoices, including

Invoice Nos. F290, F291, F293, F294, F295, and F296, and did not raise concerns regarding the absence of formal executed "Work Orders" or the terms relating to due dates for payment.

75.     However, despite its promise to remit payment to Sun Mountain within thirty (30) days after invoices were submitted by Sun Mountain and the work and services were approved, TIR has failed to remit payment in full to Sun Mountain for the outstanding amounts due in relation to Invoice Nos. F290, F291, F293, F294, F295, and F296 and has failed to remit any payment to Sun Mountain for the outstanding amounts due in relation to Invoice Nos. F297, F298, F301, F302, F307, F308, and F310.

76.     On or around January 24, 2019, Sun Mountain sent a letter to TIR demanding payment for outstanding invoices and explaining that absent payment Sun Mountain would be "forced to terminate 34 employees who are performing services."

77.     As a result of TIR's refusal to remit payment for the Outstanding Invoices in the amount of $3,495,284.92, Sun Mountain has been forced to take out loans with high interest rates to finance its payroll obligations to its employees who are performing work and services for, at the request or on behalf of TIR.

78.     By reason of the foregoing, hardship and unfairness can only be avoided by enforcing TIR's promise to remit payment to Sun Mountain within thirty (30) days after invoices were submitted by Sun Mountain and the work and services were approved by TIR.

79.     Accordingly, Sun Mountain is entitled to damages in an amount to be determined at trial, but believed to be no less than $3,495,284.92

## COUNT III
### Unjust Enrichment/ Quantum Meruit

80.     Sun Mountain repeats and realleges each and every allegation in the preceding paragraphs of this Complaint as though fully set forth herein.

- 19 -

81.     As a result of PG&E's efforts to encourage its prime contractors to subcontract with diverse business enterprises, TIR entered into a subcontract with Sun Mountain, which is a California-certified DVBE with a highly qualified staff comprised of many former or current military servicemen and women.

82.     From the inception of the relationship in March 2017, TIR and Sun Mountain adopted a process whereby PG&E and/or TIR would inform Sun Mountain of their hiring needs for TIR projects and Sun Mountain would advise whether it had any employees available with the necessary qualifications.

83.     When a decision was made to hire a Sun Mountain employee, PG&E entered the information in its Unifier system and sent TIR a "Transmittal" with the name of the TIR project, the name of the employee, and a description of the employee's "Work Classification," "Billing Classification," and the "Effective Date."  Thereafter, TIR forwarded the "Transmittal" to Sun Mountain and facilitated the onboarding.

84.     After performing work and services for, at the request or on behalf of TIR, Sun Mountain sent invoices to TIR with the names of each of its employees working on TIR projects, the number of hours worked or reimbursable expense items, and the billing or reimbursement rates agreed upon between TIR and Sun Mountain based on the employees' "Classification" and "Years of Job-related Experience."  Each of the invoices clearly stated that payment was due within thirty (30) days from the date that the invoice was submitted (with the exception of the invoices for work and services in March to June 2018 which stated that payment was due within twenty (20) days of when the invoices were submitted).

85.     Upon information and belief, TIR subsequently sent invoices to PG&E for the work and services performed by Sun Mountain on TIR projects with a "margin" reflecting the

billing rates agreed upon by PG&E and TIR.  In addition, upon information and belief, TIR included the work and services performed by Sun Mountain on monthly reports to PG&E regarding its efforts to subcontract with diverse business enterprises.

86.     For over a year-and-a-half, TIR satisfied its payment obligations to Sun Mountain in relation to 38 invoices for work and services performed by Sun Mountain for, at the request or on behalf of TIR based on the practices described above.

87.     In accordance with the parties' course of dealing, during the period between July and December 2018, Sun Mountain paid its employees to perform work and services on numerous Time and Materials projects for, at the request, or on behalf of TIR.

88.     Thereafter, during the period between August 2018 and January 2019, Sun Mountain submitted invoices to TIR reflecting the names of the Sun Mountain employees working on TIR projects, the number of hours worked or reimbursable expense items, and the agreed upon billing or reimbursement rates, including Invoice Nos. F290, F291, F293, F294, F295, F296, F297, F298, F301, F302, F307, F308, and F310.

89.     Each of the Outstanding Invoices was submitted within sixty (60) days of when the work and services were performed by Sun Mountain for, at the request, or on behalf of TIR and clearly stated that payment was due within thirty (30) days.

90.     During the period between September 2018 and January 2019, TIR made partial payments to Sun Mountain in relation to certain of the Outstanding Invoices, including Invoice Nos. F290, F291, F293, F294, F295, and F296, and did not raise concerns regarding the absence of formal executed "Work Orders" or the terms relating to due dates for payment.

91.     However, TIR has failed to remit payment in full to Sun Mountain for the outstanding amounts due in relation to Invoice Nos. F290, F291, F293, F294, F295, and F296

and has failed to remit any payment to Sun Mountain for the outstanding amounts due in relation to Invoice Nos. F297, F298, F301, F302, F307, F308, and F310.

92.     TIR has been unjustly enriched because (a) it has received additional work from PG&E as a result of its relationship with Sun Mountain, which is a California-certified DVBE; (b) it has accepted and enjoyed the benefits of the work and services performed by Sun Mountain employees for, at its request or on its behalf; and (c) it has either received payments from or recorded receivables and bankruptcy claims in relation to invoices that it has submitted to PG&E for work and services performed by Sun Mountain on TIR projects with a "margin" reflecting the billing rates agreed upon by PG&E and TIR.

93.     By reason of the foregoing, Sun Mountain is entitled to damages in an amount to be determined at trial, but believed to be no less than $3,495,284.92

## PRAYER FOR RELIEF

WHEREFORE, Sun Mountain requests that the Court enter judgment against TIR granting it the following relief:

A.     That Sun Mountain be awarded damages in relation to the Outstanding Invoices in an amount to be determined at trial, but believed to be no less than $3,495,284.92;

B.     That Sun Mountain be awarded damages in relation to interest paid on loans to finance its payroll obligations as a result of TIR's failure to pay the Outstanding Invoices in an amount to be determined at trial;

C.     That Sun Mountain be awarded pre-judgment interest at the maximum legal rate running from the date the Outstanding Invoices became due to the date of judgment herein;

D.     That Sun Mountain be awarded post-judgment interest at the maximum legal rate running from the date of judgment herein until the date the judgment is paid in full, plus costs.

E.      That Sun Mountain be awarded its costs, including attorneys' fees; and

F.      That Sun Mountain be granted such other and further relief as this Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury in this action for all issues so triable.

Dated: February 26, 2019

REED SMITH LLP

By:   */s/ Marilyn S. Mollet*
      Marilyn S. Mollet, OBA # 13326

Reed Smith Centre
225 Fifth Avenue
Pittsburgh, PA 15222
Tel: (412) 288-3131
Fax: (412) 288-3063
mmollet@reedsmith.com

And

John B. Webb (*pro hac vice application to be submitted*)
Jonathan P. Gordon (*pro hac vice application to be submitted*)
599 Lexington Avenue
New York, New York 10022
Tel: (212) 521-5400
Fax: (212) 521-5450
jwebb@reedsmith.com
jonathan.gordon@reedsmith.com

*Attorneys for Plaintiff Sun Mountain, LLC*

# EXHIBIT A

# Tulsa Inspection Resources - PUC, LLC

## Subcontractor Terms and Conditions

These Terms and Conditions ("Agreement") are by and between Tulsa Inspection Resources -PUC, LLC (and its successors, assigns and/or wholly owned subsidiaries) ("Company") and Sun Mountain LLC ("Subcontractor") that does not have a written master service agreement or subcontractor agreement with Company, and applies to all work or services or any act performed by Subcontractor for, at the request or on behalf of Company.

1. **DESCRIPTION OF SERVICES**. Subcontractor shall provide the work and services (the "Services") more specifically described in a written request from Tulsa Inspection Resources - PUC, LLC ("Work Order"), the form of which is attached hereto as Exhibit A. Subcontractor will not be paid for any work performed by the Subcontractor that is not covered in a Work Order. All Work Orders shall be in writing and in the form of the Work Order attached to this Agreement as Exhibit A. If a Work Order requires compliance with any other Agreement, Subcontractor shall comply with that Agreement in full. With respect to the Work, Subcontractor shall be bound to Prime Contractor in the same manner and to the same extent as Prime Contractor is bound to the Company (PG&E) under the contract. In the event of any conflict between the Contract and this Subcontract, the stricter terms shall control.

2. **COMPLETION DATE**. Services shall be fully completed by the Completion Date set forth in each Work Order. It is agreed that time is of the essence for this Agreement, all Work Orders, and all Services. Subcontractor shall reimburse Company for any loss, cost, damage, or expense (including, without limitation, any additional lost profit, internal costs, penalties or fines of any kind, as well as costs incurred with other subcontractors of Company), caused by Subcontractor's failure to complete the Services by the applicable Completion Date through no fault of Company. Such reimbursement will either be deducted from remaining monies owed Subcontractor under this Agreement or invoiced directly to the Subcontractor by Company and paid by Subcontractor with in thirty (30) days, as determined by Company at its sole option.

   A party whose performance is affected by reason of a Force Majeure is a "Nonperforming Party." When a delay due to a Force Majeure occurs, a Nonperforming Party may be granted an extension of performance time. The Nonperforming Party shall give the other party  written notice of the occurrence of the Force Majeure event within 5 business days after the Nonperforming Party becomes aware or reasonably should have become aware of the event, and may request, in its notice, an extension of time for its performance. The written notice shall include a detailed description of the event, its effects on the Nonperforming Party's timely performance, an estimate of the length of the delay, and a plan to remedy any actual or potential delay or nonperformance. The Nonperforming Party shall promptly give written notice of the ending of the event to the other party. A Nonperforming Party that complies with the notice provisions here shall be granted in writing an extension of time for performance equal to the time performance is delayed by Force Majeure.

3. **PAYMENT FOR SERVICES**. In exchange for the Services, Company will pay Subcontractor according to one of the three options as set forth in the Work Order: (i) Lump Sum; (ii) Progress Payment; or (iii) Time and Materials. **Subcontractor must submit invoices no later than sixty (60) days after the date the Services are performed. Payment will not be made for any Services invoiced more than sixty (60) days after they are performed. If the Work Order provides for retainage, Company may withhold the same percentage retainage specified in the Work Order from each payment to Subcontractor until completion of the Services and the Services are to Company's satisfaction and accepted by Company.** For Lump Sum projects, final payment will be issued only upon completion of all the Services described in the Work Order and inspection and acceptance by Company. For Progress Payment and Time and Materials projects, Subcontractor will be paid within thirty (30) days after an invoice is submitted to and the Services approved by Company. All invoices submitted by Subcontractor and payments made to the Subcontractor in reference to this Agreement will be tracked by Work Order numbers. Additionally, Company will be responsible for paying Subcontractor only for the Services described in the Work Order. Any costs incurred

by Subcontractor, including, but not limited to federal, state or local taxes and permitting costs, employee benefit, overtime charges, or wage increases, which are not identified and included in the Work Order shall be the sole responsibility of Subcontractor. All time and material rates shall be reflected on or attached to the Work Order. Company may withhold payments as a result of Subcontractor's failure to perform its obligations set forth in this Agreement and/or the Work Order at Company's sole discretion.

4. **PERFORMANCE**. Subcontractor is required to perform all work in a safe and workman like manner and meet all completion schedules and dates in the Work Order and the Agreement Documents. The term "Agreement Documents" includes this Subcontract Agreement, any Work Order and all portions of the Agreement between Company and Owner as identified on the Work Order, including without limitation Plans, Drawings, Specifications, Addenda, and General and Special Conditions to the extent applicable to the work and Services of Subcontractor. Subcontractor agrees to supply as many workers as needed, or work as many hours as needed, to meet the completion schedules and date without any additional monies being paid to Subcontractor unless agreed to in writing by Company. The Services will be provided in accordance with the specifications set forth in the Work Order applicable to the Services and otherwise in full compliance with all terms, provisions, restrictions, and requirements set forth in the Work Order.

5. **TOOLS**. The Subcontractor is responsible for furnishing all tools and equipment required to perform the Services. The Company will not be responsible for any lost or stolen tools or equipment.

6. **OVERTIME**. Subcontractor shall be responsible for any and all overtime pay or benefits due its employees as required to meet the completion schedule and date set forth in each Work Order. Any overtime compensation that is not specifically covered or addressed in any Work Order that is or may be incurred as a result of the Services or additions to the Services or schedule changes will not be paid for by the Company unless the Company agrees to such increase in writing prior to commencement of the Services requiring overtime pay.

7. **TERM/TERMINATION**. Company may terminate this Agreement with or without cause at any time. This Agreement will terminate automatically upon completion by the Subcontractor of the Services required under all outstanding Work Orders. If Company issues Subcontractor another Work Order, Subcontractor shall have the option to accept or reject the new Work Order, and if it accepts the new Work Order, this Agreement shall control and the terms and provisions herein shall govern the relationship of Company and Subcontractor with respect to the Services described in the Work Order. This Agreement is in no way a guaranty of any work or any Work Order. Subcontractor may terminate this Agreement with or without cause with thirty (30) days written notice to Company.

8. **CANCELLATION/TERMINATION**. In the event of termination, Subcontractor shall be paid only for Services rendered up to the date of termination that are approved and accepted by Company in writing. In the event of termination prior to completion, Subcontractor will be compensated for any work completed based on the breakdown of its bid. If the work completed is not separately quoted in the Subcontractor's bid then Company reserves the right to compensate the Subcontractor based on a percentage of work completed up to the cancellation date as reasonably determined by Company in its sole discretion. Company reserves the right to terminate this Agreement at any date, with no further compensation if Company determines that the Subcontractor is not performing its obligations under this Agreement or any Work Order. Subcontractor agrees to reimburse Company all costs incurred by the Company due to the Subcontractor's negligence or other breach of this Agreement or any Work Order.

9. **RELATIONSHIP OF PARTIES**. Subcontractor is an independent contractor of Company. Subcontractor is not an employee of the Company, but is an independent contractor for all Services. The Company will not provide fringe benefits, including liability, workman's compensation, health insurance benefits, paid vacation, or any other employee benefit, for the benefit of the Subcontractor. Subcontractor will determine the method, details, and means of performing all Services, and will provide all labor, tools, fuel, and equipment necessary to perform, all Services. Company shall have the right to inspect and approve the Services, but shall not have the right to direct or control the Services.

10. **SUB-SUBCONTRACTORS**. Subcontractor may not enter into any sub-subcontract without the prior

**2**

written consent and approval of Company.  If a sub-contract is approved and signed, Subcontractor shall be and remain primarily liable as if no such sub-subcontract had been made.  No sub-subcontract shall bind or purport to bind Company, but to the extent reasonably possible, all sub-subcontracts shall contain provisions permitting assignment thereof to Company.  Subcontractor shall be fully responsible to Company for all Services performed and/or provided by Subcontractor's sub-subcontractors.  The provisions of this Agreement and the Work Order shall apply to such sub-subcontractor and its employees in all respects in the same manner as such provisions apply to Subcontractor.  Subcontractor is solely responsible for making all sub-subcontractors aware of and assuring compliance with all of the provisions of this Agreement and the Work Order and shall indemnify and hold Company harmless from and against any Claims resulting from the non-conformance by anyone in this regard.

11. **AVAILABILITY**. Subcontractor agrees to participate in a minimum of one pre-construction meeting with Company and will also attend scheduled meetings with a notice of no less than 48 hours. Subcontractor also agrees to make its employees available for drug tests and background checks if so requested by Company.

12. **CONFIDENTIALITY**. Subcontractor and its employees, agents, or representatives will not at any time or in any manner, either directly or indirectly, use for their personal benefit, divulge, disclose, or communicate in any manner, any information about Company or provided by Company to Subcontractor in preparation for or in the course of Subcontractor's work for Company. Subcontractor and its employees, agents, and representatives will protect such information and treat it as strictly confidential. This provision will continue to be effective after the termination of this Agreement. Upon termination of this Agreement, Subcontractor will return to Company all records, notes, documentation, and other items that were used, created, or controlled by Subcontractor during the term of this Agreement concerning Company or any Services.

13. **WARRANTY**.  Subcontractor shall provide Services and meet its obligations under this Agreement in a timely safe and workmanlike manner, and all materials and products shall be free from defects, in accordance with generally acceptable industry standards. If more stringent, Subcontractor will perform its Services in accordance with the standards and specifications set forth in the Work Order.  For 365 days from the date the work is complete and approved by Company, or such longer period as is provided in the Work Order, Subcontractor warrants that the Services, parts and materials and/or products provided shall conform with the requirements of this Agreement and any Work Order.   If not, Subcontractor shall re-perform such non-conforming services or shall repair or replace such non-conforming parts, materials or products at Subcontractor's sole cost and expense.  If the problem cannot be fixed, Subcontractor shall re-pay all fees paid with respect to the non-conforming Service, material or product and pay Company for any and all damages related to the non-conforming Services or product.

14. **CONDUCT AND APPEARANCE**.  Subcontractor and its employees, agents, or representatives shall conduct themselves in a professional manner at all times while representing Company.  Appearances by Subcontractor employees shall meet the guidelines set forth by the Company (*i.e.*, no short pants, no t-shirts with offensive language or symbols, no wearing of any garments or hat that bears the name or trademark of any company that might be in competition with Company).

15. **TAXES, REPORTING AND LIENS**. Subcontractor agrees to be responsible for, to pay, withhold and discharge all taxes (including but not limited to federal or state income, franchise, personnel, payroll, social security, FICA, sales and use taxes, and/or other taxes related to Subcontractor, its Services and any employees or agents of Subcontractor who are not themselves independent contractors).  Subcontractor agrees that Company will have no responsibility for withholding or paying any income taxes, payroll taxes, social security taxes, FICA or other taxes related to Subcontractor and any employees, agents or sub-subcontractors of Subcontractor. **Further, Subcontractor will indemnify and hold the Company harmless from and against any and all claims, demands, judgments or liability of any sort arising directly or indirectly out of Subcontractor's failure to pay and/or withhold and pay any such taxes, or the Company's agreement not to pay and/or withhold and pay such taxes.** The Subcontractor agrees to complete and sign a W-9 IRS form and deliver same to the Company.

Subcontractor agrees to be responsible for and to pay any and all lien claims, charges, or other impositions arising out of, in connection with or resulting from the Services, and to comply with all payroll tax laws, old

age pension laws, equal employment opportunity laws and unemployment laws, including payment of all contributions legally due or payable as a result of any governmental or private pension or profit-sharing plans with reference to Subcontractor's employees engaged in the performance of any Services hereunder. If, upon the completion of any particular job, the Company shall have cause to believe that there are unsatisfied claims for labor, materials or injuries to third persons or property, the Company may request, and Subcontractor shall furnish, proof satisfactory to the Company that such claims are satisfied or discharged. The Company shall not be liable to Subcontractor for the reimbursement of any taxes levied directly or indirectly on or measured by income or chargeable gains or special assessments of any kind or nature.

16. **INDEMNIFICATION**

**TO THE FULLEST EXTENT ALLOWED BY LAW, SUBCONTRACTOR AGREES TO AND SHALL DEFEND, INDEMNIFY, AND HOLD HARMLESS COMPANY, ITS AGENTS, EMPLOYEES, OFFICERS, DIRECTORS, AFFILIATES, SUCCESSORS, ASSIGNS, ANY OWNERS AS IDENTIFIED ON ANY WORK ORDER AND/OR CUSTOMERS/CLIENTS OF COMPANY (COLLECTIVELY THE "COMPANY INDEMNIFIED PARTIES") FROM AND AGAINST ANY AND ALL CLAIMS, DAMAGES AND/OR CAUSES OF ACTION WHICH ARISE OUT OF, ARE IN CONNECTION WITH, INCIDENT TO OR THE RESULT OF, DIRECTLY OR INDIRECTLY, 1) THE WORK OR SERVICES PERFORMED UNDER THIS AGREEMENT OR A WORK ORDER BY SUBCONTRACTOR OR 2) ANY ACT OR OMISSION OF SUBCONTRACTOR OR ANY AGENT, EMPLOYEE, OFFICER, DIRECTOR, AFFILIATE, SUCCESSOR, ASSIGN OR SUB-SUBCONTRACTOR. SUBCONTRACTOR'S DUTY TO DEFEND, INDEMNIFY AND HOLD HARMLESS INCLUDES BUT IS NOT LIMITED TO ALL DAMAGES (INCLUDING ACTUAL, CONSEQUENTIAL AND PUNTITIVE DAMAGES AS WELL AS DAMAGES FOR BODILY INJURY, DEATH AND/OR DAMAGE TO PROPERTY), ALL COSTS, ALL EXPENSES, ALL ATTORNEYS' FEES, ALL EXPERT FEES, ALL FINES AND PENALTIES, AND ALL COMPENSATION OR BENEFITS UNDER ANY WORKERS' COMPENSATION ACT, DISABILITY ACT OR ANY OTHER EMPLOYEE BENEFIT ACT, LAW, POLICY OR REQUIREMENT. THE OBLIGATIONS UNDER THIS PARAGRAPH 16 SHALL NOT APPLY EVEN IF THE DAMAGE, BODILY INJURY OR DEATH IS DETERMINED IN A FINAL NON-APPEALABLE JUDGEMENT BY A COURT OF COMPETENT JURISDICTION TO BE CAUSED BY THE CONCURRENT OR JOINT NEGLIGENCE, FAULT OR STRICT LIABILITY OF ANY OF THE COMPANY INDEMNIFIED PARTIES. THIS OBLIGATIONS UNDER THIS PARAGRPAH 16 SHALL NOT APPLY TO THE EXTENT THE SOLE OR GROSS NEGLIGENCE OR WILLFUL MISCONDUCT OF COMPANY CAUSES THE DAMAGE IN QUESTION. IF THIS INDEMNITY AND HOLD HARMLESS OBLIGATION OR ANY PART THEREOF IS DEEMED UNENFORCEABLE, ILLEGAL OR VOID, COMPANY AND SUBCONTRACTOR AGREE THAT THE INDEMNITY AND HOLD HARMLESS OBLIGATION SHALL BE ENFORCED TO THE FULLEST EXTENT ALLLOWED BY THE APPLICABLE LAW.**

This indemnification and hold harmless obligation shall include, without limitation, claims for pollution and environmental damage, civil or criminal fines or penalties, conditions discovered or undiscovered, acts or omissions directly or indirectly arising or alleged to arise out of or in any way incidental to the performance of the Services. Subcontractor shall pay all costs and expenses of defense, including without limitation attorneys' fees, expert fees, and court costs incurred by any of the Company Indemnified Parties and shall apply to any liabilities imposed as a result of any statute, rule, regulation or theory of strict liability, including, but not limited to, strict products liability or strict statutory liability. This indemnification and hold harmless obligation shall not be limited to damages, compensation, or benefits payable under insurance policies, workers compensation acts, disability benefits act, or any other employees' benefits act, but is for all damages.

17. **INSURANCE**. During the term of this Agreement, Subcontractor will maintain liability and other insurance coverage with a reputable insurance company as set forth on Schedule 1(the "Liability Insurance") , which coverage shall provide for coverage for the actions or inaction of all employees, agents and subcontractors of Subcontractor engaged in providing the Services, shall name the Company as well as the Owner identified on any Work Order as an additional insured and shall contain a waiver of subrogation against the Company

and Owner providing for the waiver of subrogation to the fullest extent allowed by law. Prior to providing any Services pursuant to this Agreement, Subcontractor will provide the Company with a certificate of insurance evidencing the required Liability Insurance, showing the Company and Owner as an additional insured under such policy and providing that such policy cannot be canceled without thirty (30) days prior written notice to the Company. Subcontractor agrees to notify Company immediately upon notice of termination or actual termination of the Liability Insurance and agrees that Subcontractor will not provide any Services when such Liability Insurance is not in full force and effect.

18. **REMEDIES**. In addition to any and all other rights a party may have available according to law and under this Agreement, if a party defaults by failing to substantially perform any provision, term or condition of this Agreement (including without limitation the failure to make a monetary payment when due), the other party may terminate the Agreement by providing written notice to the defaulting party. This notice shall describe with sufficient detail the nature of the default. The party receiving such notice shall have five (5) working days from the effective date of such notice to cure the default(s). Unless waived by a party providing notice, the failure to cure the default(s) within such time period shall result in the automatic termination of this Agreement.

19. **SEVERABILITY**. If any provision of this Agreement is held to be invalid or unenforceable for any reason, the remaining provisions will continue to be valid and enforceable. If a court finds that any provision of this Agreement is invalid or unenforceable, but that by limiting such provision it would become valid and enforceable, then such provision will be deemed to be written, construed, and enforced as so limited to the fullest extent allowed by law.

20. **ENTIRE AGREEMENT/AMENDMENT**. Company and Subcontractor acknowledge that they understand the terms of this Agreement and that they have agreed to each term contained therein as evidenced by their signatures. This Agreement constitutes the entire agreement between the parties with respect to the subject matter hereof and no oral representations or promises, whether made prior to or subsequent to the execution of this Agreement, shall be binding upon either party unless set forth in a writing signed by the party sought to be charged. This Agreement supersedes any quotes, prior written or oral agreements between the parties. Company and Subcontractor make these representations with the intent that Company and Subcontractor may rely on them, and in order to induce each other to enter into this Agreement. Unless otherwise specifically provided herein, any reference herein to this Agreement shall be deemed to include all Exhibits and amendments hereto. This Agreement and any Work Order cannot and shall not be amended or changed, except by writing signed by both parties hereto.

21. **GOVERNING LAW AND DISPUTES**. This Agreement shall be construed in accordance with the laws of the State of Oklahoma. Company and Subcontractor agree that Tulsa County, Oklahoma is the proper place, venue and jurisdiction for any dispute, and both parties are subject to and consent to this jurisdiction.

22. **NOTICE**. Whenever notice is required or permitted by this Agreement, such notice shall be in writing and shall be effective upon receipt, and shall be sent by nationally recognized overnight courier (for next business day delivery), by facsimile transfer device or by certified or registered mail, return receipt requested, to the Subcontractor at the address and fax number set forth on the signature page hereof, or to Tulsa Inspection Resources, LLC at 5727 South Lewis, Suite 300, Tulsa, Oklahoma 74105 Attn: General Counsel.

23. **ASSIGNMENT**. Subcontractor shall not assign or transfer this Agreement or any Work Order without the prior written consent of the Company. Company may assign or transfer this Agreement or any Work Order without prior consent or notice to Subcontractor.

24. **NON-WAIVER**. The waiver by either party of a breach or default of any provisions of this Agreement by the other party shall not be construed as a waiver of any succeeding breach of the same or any other provision. Nor shall any delay or omission on the part of either party to exercise or avail itself of any right, power or privilege that it has or may have hereunder operate as a waiver of any right or privilege of such party.

Agreed to as of the date listed below.


For: Tulsa Inspection Resources - PUC, LLC

Rod Einer
Rod Einer

For: Sun Mountain, LLC

Michael Elmore

Printed Name and Sign


Vice-President/COO
Title

CEO
Title


March 20, 2017
Date

March 22, 2017
Date


6

## Exhibit A
### Tulsa Inspection Resources-PUC, LLC
### WORK ORDER

OWNER: _____     Job Number: _____

SUBCONTRACTOR:_____     Services Completion Date:_____

    Subcontractor will provide and be solely responsible for all labor, materials, supplies, tools, equipment, supervision, insurance, taxes, permits, fees, costs, expenses, licenses and inspections necessary to perform and complete in a good and workmanlike manner the following (the "Services"):

| Quantity | Unit | Description | Amount |
|---|---|---|---|
|  |  |  |  |

    This work order is a Agreement and it, all work, all payments and all Services are governed by and subject to the Subcontractor Terms and Conditions ("STC") of Tulsa Inspection Resources-PUC, LLC (and its successors, assigns, and/or wholly owned subsidiaries) ("TIR"), which subcontractor acknowledges receipt of, and which are incorporated in and part of this work order as if set forth at length herein. TIR only offers this Agreement and any payment for any work or Services subject to the STC and Subcontractor's agreement to be bound by the STC. TIR does not authorize or allow any work or Services that are not governed by the STC. By starting, conducting or doing any work or Services, Subcontractor agrees to be subject to and bound by this work order and the STC for all work, payments and Services, even if Subcontractor has not signed or returned this work order to TIR. The STC cannot be modified except in writing signed an authorized representative of TIR.

    Company will pay Subcontractor a total of $_____ (the "**Subcontract Sum**") for the Services. Payment for the Services will be made in ❑ a Lump Sum, upon completion and acceptance of the Services, ❑ Progress Payments, based on percentage completion, or ❑ as invoiced for Time and Materials.

Subcontractor: _____     EIN or Social # _____

Signature: _____

Printed Name: _____

Title: _____

7

# SCHEDULE 1

***Please ensure that the applicable Certificates of Insurance (COI) meet the coverage requirements detailed below and are worded correctly. Certificate Holder should be listed on the COI precisely as shown.**

**Tulsa Inspection Resources-PUC, LLC (and its successors, assigns and/or wholly owned subsidiaries)**
**5727 South Lewis Ave., Suite 300**
**Tulsa, Oklahoma 74105**
**918-748-3900 Voice**
**918-748-3905 Fax**

**Tulsa Inspection Resources-PUC, LLC and Owner must be named as Certificate Holder and added as an Additional Insured with respect to General liability, Auto liability and Excess/Umbrella liability.**

**A Waiver of Subrogation shall be provided to TIR and Owner with respect to General Liability, Auto Liability, Umbrella/Excess Liability and Workers Compensation/Employer's liability.**

## INSURANCE REQUIREMENTS

A. All insurance policies procured and maintained by Subcontractor must be written with insurance companies licensed to do business in the state where the Services will be performed, and carry a rating of A- VII or better as shown in the most current issue of A.M. Best's Key Rating Guide, under forms of policies satisfactory to Company in the type and amounts as set forth below:

    i. Worker's Compensation Insurance, including occupational disease coverage, in accordance with the benefits afforded by the statutory worker's compensation acts applicable to the state, territory or district of hire, supervision or place of accident and including, when applicable, full coverage for maritime obligations, the United States Longshoremen's and Harbor Worker's Compensation Act, Outer Continental Shelf Lands Act, the Jones Act, and Death on the High Seas Act. (Sole proprietorships with no employees falling within the jurisdiction of any statutory worker's compensation act must so certify to Company in writing.)

    ii. Employer's Liability insurance to include alternate employer, all states and in rem coverage, in an amount not less than $1,000,000 each accident, $1,000,000 disease each employee and $1,000,000 disease policy limit. With respect to offshore work or other work entailing maritime or U.S. Longshoremen's and Harbor Worker's Compensation Act obligations, limits shall be carried of not less than $1,000,000 each accident, $1,000,000 disease each employee and $1,000,000 disease policy limit.

    iii. Commercial General Liability Insurance: Coverage shall be at least as broad as the Insurance Services Office (ISO) Commercial General Liability Coverage "occurrence" form, with no coverage deletions.

        The limit shall not be less than $10,000,000 each occurrence for bodily injury, property damage and personal injury. Coverage limits may be satisfied using an umbrella or excess liability coverage.

        Coverage shall: (a) By "Additional Insured" endorsement add as insureds, Company, Owner, their respective affiliates, subsidiaries, parent company, directors, officers, agents and employees with respect to liability arising out of or connected with the Work performed by or for the Company/Owner.

    iv. Business Automobile Liability Insurance: Coverage shall be at least as broad as the Insurance Services Office (ISO) Business Auto Coverage form covering Automobile Liability, code 1, "any auto."

The limit shall not be less than $5,000,000 each accident for bodily injury and property damage. Coverage limits may be satisfied using an umbrella or excess liability coverage.

v.   Professional Liability Insurance: Errors and Omissions Liability insurance appropriate to Contractor's profession. Coverage shall be for a professional error, act or omission arising out of the scope of services shown in the Contract. The limit shall not be less than $5,000,000 each claim.

vi.  If the Services require the use of aircraft by Subcontractor, Aircraft Liability Insurance covering all owned, non-owned, or hired aircraft used in connection with the performance of this Agreement, as well as Guest Voluntary Settlement, and passengers and crew, shall be procured, with policy limits of not less than:

- $50,000.000 per occurrence for services providing fixed wing transportation of Company, LP executives;

- $20,000,000 per occurrence for offshore rotorcraft operations;

- $5,000,000 per occurrence for activities by fixed wing aircraft providing services such as: pipeline inspections, coal pile inventory inspections and aerial photography; and

- $5,000,000 per occurrence for all other services not listed above.

vii. If Subcontractor uses marine craft in performing Services hereunder, Protection and Indemnity (P&I) Insurance (including war risk), including coverage for injuries to or death of masters, mates and crews of vessels, and excess collision liability with a minimum limit of not less than five million dollars ($5,000,000) per occurrence, or the value of the hull, whichever is greater; Hull & Machinery insurance, including full collision liability, in an amount equal to the fair market value of each vessel that is owned and/or chartered by Subcontractor and used in connection with the performance of this Agreement. Subcontractor may cover its obligation for loss of life or bodily injury to the crew of the vessel by extension of the Workers Compensation Insurance under Ai above. If there is cargo on the marine vessel, Cargo Marine Insurance coverage covering the value of the cargo.

viii. Company also reserves the right, in its discretion or at the request of Owner, to require higher limits with respect to Services having a greater risk exposure. If so, such higher limits shall be set forth in the applicable Work Order.

B.   **THE INSURANCE REQUIREMENTS SET FORTH IN THIS SCHEDULE  SHALL IN NO WAY LIMIT SUBCONTRACTOR'S LIABILITY OR RESPONSIBILITY UNDER THIS AGREEMENT NOR SHALL THEY BE CONSTRUED TO BE THE ULTIMATE TYPES AND AMOUNTS OF INSURANCE SUBCONTRACTOR SHOULD MAINTAIN TO ADEQUATELY INSURE ITSELF.**

C.   It is further expressly agreed by Subcontractor that any and all premiums and deductibles and/or any other charges due with respect to such policies of insurance shall be the sole cost and responsibility of Subcontractor. Subcontractor shall carry deductibles acceptable to and approved by Company.

D.   All such policies of insurance (with the exception of Workers' Compensation, Employer's Liability, and if required to be provided, Professional Liability Insurance) shall name Company and Owner as an additional insured.


**ACORD®**

# CERTIFICATE OF LIABILITY INSURANCE

| | DATE (MM/DD/YYYY) |
|---|---|
| | 3/15/2017 |

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.  THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT:  If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement.  A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER Pinnacle Brokers Insurance Solutions, LLC.<br>1330 North Broadway, Suite 204<br>Walnut Creek, CA 94596<br><br>www.pinnbrokers.com          0I65808 | CONTACT NAME: | | |
|---|---|---|---|
| | PHONE (A/C, No, Ext): 925-952-8680 | | FAX (A/C, No): 925-952-8681 |
| | E-MAIL ADDRESS: certs@pinnbrokers.com | | |
| | INSURER(S) AFFORDING COVERAGE | | NAIC # |
| | INSURER A : Underwriters at Lloyd's London | | 15792 |
| INSURED Sun Mountain LLC<br>1630 N. Main St., #107<br>Walnut Creek CA  94596 | INSURER B : StarStone Specialty Insurance Company | | 44776 |
| | INSURER C : | | |
| | INSURER D : | | |
| | INSURER E : | | |
| | INSURER F : | | |

## COVERAGES   CERTIFICATE NUMBER: 34668776   REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED.  NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSD | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | COMMERCIAL GENERAL LIABILITY | | | PGIARK05669-00 | 12/8/2016 | 12/8/2017 | EACH OCCURRENCE | $ 5,000,000 |
| | ☐ CLAIMS-MADE ☐ OCCUR | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ NONE |
| | ✓ Professional Liability | | | | | | MED EXP (Any one person) | $ NONE |
| | | | | | | | PERSONAL & ADV INJURY | $ NONE |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | GENERAL AGGREGATE | $ 5,000,000 |
| | ✓ POLICY ☐ PRO-JECT ☐ LOC | | | | | | PRODUCTS - COMP/OP AGG | $ NONE |
| | OTHER: | | | | | | | $ |
| | AUTOMOBILE LIABILITY | | | | | | COMBINED SINGLE LIMIT (Ea accident) | $ |
| | ☐ ANY AUTO | | | | | | BODILY INJURY (Per person) | $ |
| | ☐ OWNED AUTOS ONLY ☐ SCHEDULED AUTOS | | | | | | BODILY INJURY (Per accident) | $ |
| | ☐ HIRED AUTOS ONLY ☐ NON-OWNED AUTOS ONLY | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| B | ✓ UMBRELLA LIAB ☐ OCCUR | | | 7363X170ALI | 3/14/2017 | 4/1/2018 | EACH OCCURRENCE | $ 8,000,000 |
| | EXCESS LIAB ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ 8,000,000 |
| | ☐ DED ✓ RETENTION $ NONE | | | | | | | $ |
| | WORKERS COMPENSATION AND EMPLOYERS' LIABILITY Y / N | | | | | | ☐ PER STATUTE ☐ OTH-ER | |
| | ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) | N / A | | | | | E.L. EACH ACCIDENT | $ |
| | If yes, describe under DESCRIPTION OF OPERATIONS below | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |
| A | Pollution Liabiility | | | PGIARK05669-00 | 12/8/2016 | 12/8/2017 | Each Claim - $1,000,000<br>Aggregate - $1,000,000<br>Claim Expense - $1,000,000 | |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES  (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

Evidence of Coverage; The excess liability coverage only goes over the GL & WC coverage with Hartford Insurance.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| Tulsa Inspection Resources, Inc.<br>5727 S. Lewis Ave., Ste. 300<br>Tulsa OK  74105 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. |
| | AUTHORIZED REPRESENTATIVE<br><br>Wendy Stewart |

© 1988-2015 ACORD CORPORATION.  All rights reserved.

**ACORD 25 (2016/03)**   The ACORD name and logo are registered marks of ACORD

34668776  |  '16 Prof. & Poll & '17 XS  |  Wendy Stewart  |  3/15/2017 2:25:02 PM (PDT)  |  Page 1 of 1

# CERTIFICATE OF LIABILITY INSURANCE

**ACORD**

**DATE(MM/DD/YYYY)**
3/9/2017

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW. THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement. A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: | Paychex Insurance Agency Inc | | |
|---|---|---|---|---|
| PAYCHEX INSURANCE AGENCY, INC.<br>150 SAWGRASS DRIVE<br>ROCHESTER, NY 14620 | PHONE (A/C, NO. EXT): | 877-266-6850 | FAX (A/C, No): | 585-389-7426 |
| | E-MAIL ADDRESS: | Certs@paychex.com | | |
| | **INSURER(S) AFFORDING COVERAGE** | | **NAIC #** | |
| INSURED<br><br>Sun Mountain LLC<br>1630 N Main 107<br>Walnut Creek, CA 94596 | INSURER A: | *AMTRUST NORTH AMERICA* | | |
| | INSURER B: | | | |
| | INSURER C: | | | |
| | INSURER D: | | | |
| | INSURER E: | | | |
| | INSURER F: | | | |

## COVERAGES          CERTIFICATE NUMBER:          REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED. NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| | **GENERAL LIABILITY** | | | | | | EACH OCCURRENCE | $ |
| | COMMERCIAL GENERAL LIABILITY | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $ |
| | CLAIMS-MADE ☐ OCCUR | | | | | | MED EXP (Any one person) | $ |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | | | | | | | GENERAL AGGREGATE | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: | | | | | | PRODUCTS - COMP/OP AGG | $ |
| | ☐ POLICY ☐ PROJECT ☐ LOC | | | | | | | $ |
| A | **AUTOMOBILE LIABILITY**<br>X ANY AUTO<br>☐ ALL OWNED AUTOS ☐ SCHEDULED AUTOS<br>☐ HIRED AUTOS ☐ NON-OWNED AUTOS | n/a | n/a | SPP1344869 | 1/25/17 | 1/25/18 | COMBINED SINGLE LIMIT (Ea accident) | $5,000,000.00 |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| | ☐ UMBRELLA LIAB ☐ OCCUR | | | | | | EACH OCCURRENCE | $ |
| | ☐ EXCESS LIAB ☐ CLAIMS-MADE | | | | | | AGGREGATE | $ |
| | ☐ DED ☐ RETENTION $ | | | | | | | $ |
| | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** Y / N<br>ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED?<br>(Mandatory in NH)<br>If yes, describe under DESCRIPTION OF OPERATIONS below | | N/A | | | | ☐ WC STATU-TORY LIMITS ☐ OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $ |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $ |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $ |

**DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (Attach ACORD 101, Additional Remarks Schedule, if more space is required)**

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| TULSA INSPECTION RESOURCES<br>5727 SOUTH LEWIS AVE<br>TULSA, OK 74105 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS, BUT FAILURE TO MAIL SUCH NOTICE SHALL IMPOSE NO OBLIGATION OR LIABILITY OF ANY KIND UPON THE COMPANY, ITS AGENTS OR REPRESENTATIVES.<br><br>AUTHORIZED REPRESENTATIVE |

ACORD 25 (2010/05)          ©1988-2010 ACORD CORPORATION. All rights reserved.
The ACORD name and logo are registered marks of ACORD



# CERTIFICATE OF LIABILITY INSURANCE

**DATE (MM/DD/YYYY)**
3/15/2017

THIS CERTIFICATE IS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.  THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement.  A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: | | |
|---|---|---|---|
| PAYCHEX INSURANCE AGENCY INC/PAC | PHONE (A/C, No, Ext): | | FAX (A/C, No): (888) 443-6112 |
| 250881 P: F:(888) 443-6112 | E-MAIL ADDRESS: | | |
| PO BOX 33015 | INSURER(S) AFFORDING COVERAGE | | NAIC# |
| SAN ANTONIO TX 78265 | INSURER A: Sentinel Ins Co LTD | | 11000 |
| INSURED | INSURER B: Hartford Ins Co of the Midwest | | 37478 |
| SUN MOUNTAIN LLC | INSURER C: | | |
| 1630 N MAIN 107 | INSURER D: | | |
| WALNUT CREEK CA 94596 | INSURER E: | | |
| | INSURER F: | | |

## COVERAGES          CERTIFICATE NUMBER:          REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED.  NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS, EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | **COMMERCIAL GENERAL LIABILITY** X CLAIMS-MADE X OCCUR X General Liab | | | 76 SBW UH6733 | 04/01/2016 | 04/01/2017 | EACH OCCURRENCE | $2,000,000 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $1,000,000 |
| | | | | | | | MED EXP (Any one person) | $10,000 |
| | | | | | | | PERSONAL & ADV INJURY | $ |
| | GEN'L AGGREGATE LIMIT APPLIES PER: POLICY PRO-JECT X LOC OTHER: | | | | | | GENERAL AGGREGATE | $4,000,000 |
| | | | | | | | PRODUCTS - COMP/OP AGG | $4,000,000 |
| | | | | | | | | $ |
| A | **AUTOMOBILE LIABILITY** ANY AUTO OWNED AUTOS ONLY SCHEDULED AUTOS X HIRED AUTOS ONLY X NON-OWNED AUTOS ONLY | | | 76 SBW UH6733 | 04/01/2016 | 04/01/2017 | COMBINED SINGLE LIMIT (Ea accident) | $2,000,000 |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| | | | | | | | | $ |
| A | X **UMBRELLA LIAB** X OCCUR EXCESS LIAB CLAIMS-MADE DED X RETENTION $ 10,000 | | | 76 SBW UH6733 | 04/01/2016 | 04/01/2017 | EACH OCCURRENCE | $1,000,000 |
| | | | | | | | AGGREGATE | $1,000,000 |
| B | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH) If yes, describe under DESCRIPTION OF OPERATIONS below | Y/N N/A | | 76 WEG KU0629 | 02/18/2017 | 02/18/2018 | X PER STATUTE OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $1,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)
Those usual to the Insured's Operations.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| TULSA INSPECTION RESOURCES 5727 S LEWIS AVE STE 300 TULSA, OK 74105 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS. AUTHORIZED REPRESENTATIVE *[signature]* |

© 1988-2015 ACORD CORPORATION. All rights reserved.

ACORD 25 (2016/03)          The ACORD name and logo are registered marks of ACORD



# CERTIFICATE OF LIABILITY INSURANCE

DATE (MM/DD/YYYY)
3/15/2017

THIS CERTIFICATEIS ISSUED AS A MATTER OF INFORMATION ONLY AND CONFERS NO RIGHTS UPON THE CERTIFICATE HOLDER. THIS CERTIFICATE DOES NOT AFFIRMATIVELY OR NEGATIVELY AMEND, EXTEND OR ALTER THE COVERAGE AFFORDED BY THE POLICIES BELOW.  THIS CERTIFICATE OF INSURANCE DOES NOT CONSTITUTE A CONTRACT BETWEEN THE ISSUING INSURER(S), AUTHORIZED REPRESENTATIVE OR PRODUCER, AND THE CERTIFICATE HOLDER.

IMPORTANT: If the certificate holder is an ADDITIONAL INSURED, the policy(ies) must have ADDITIONAL INSURED provisions or be endorsed. If SUBROGATION IS WAIVED, subject to the terms and conditions of the policy, certain policies may require an endorsement.  A statement on this certificate does not confer rights to the certificate holder in lieu of such endorsement(s).

| PRODUCER | CONTACT NAME: | | |
|---|---|---|---|
| PAYCHEX INSURANCE AGENCY INC/PAC | PHONE (A/C, No, Ext): | | FAX (A/C, No): (888) 443-6112 |
| 250881 P: F:(888) 443-6112 | E-MAIL ADDRESS: | | |
| PO BOX 33015 | | INSURER(S) AFFORDING COVERAGE | NAIC# |
| SAN ANTONIO TX 78265 | INSURER A: Sentinel Ins Co LTD | | 11000 |
| INSURED | INSURER B: Hartford Ins Co of the Midwest | | 37478 |
| | INSURER C: | | |
| SUN MOUNTAIN LLC | INSURER D: | | |
| 1630 N MAIN 107 | INSURER E: | | |
| WALNUT CREEK CA 94596 | INSURER F: | | |

## COVERAGES    CERTIFICATE NUMBER:    REVISION NUMBER:

THIS IS TO CERTIFY THAT THE POLICIES OF INSURANCE LISTED BELOW HAVE BEEN ISSUED TO THE INSURED NAMED ABOVE FOR THE POLICY PERIOD INDICATED.  NOTWITHSTANDING ANY REQUIREMENT, TERM OR CONDITION OF ANY CONTRACT OR OTHER DOCUMENT WITH RESPECT TO WHICH THIS CERTIFICATE MAY BE ISSUED OR MAY PERTAIN, THE INSURANCE  AFFORDED BY THE POLICIES DESCRIBED HEREIN IS SUBJECT TO ALL THE TERMS,EXCLUSIONS AND CONDITIONS OF SUCH POLICIES. LIMITS SHOWN MAY HAVE BEEN REDUCED BY PAID CLAIMS.

| INSR LTR | TYPE OF INSURANCE | ADDL INSR | SUBR WVD | POLICY NUMBER | POLICY EFF (MM/DD/YYYY) | POLICY EXP (MM/DD/YYYY) | LIMITS | |
|---|---|---|---|---|---|---|---|---|
| A | **COMMERCIAL GENERAL LIABILITY** X  CLAIMS-MADE  X OCCUR  X General Liab | | | 76 SBW UH6733 | 04/01/2016 | 04/01/2017 | EACH OCCURRENCE | $2,000,000 |
| | | | | | | | DAMAGE TO RENTED PREMISES (Ea occurrence) | $1,000,000 |
| | | | | | | | MED EXP (Any one person) | $10,000 |
| | | | | | | | PERSONAL & ADV INJURY | $2,000,000 |
| | GEN'L AGGREGATE LIMIT APPLIES PER: POLICY  PRO-JECT  X LOC  OTHER: | | | | | | GENERAL AGGREGATE | $4,000,000 |
| | | | | | | | PRODUCTS - COMP/OP AGG | $4,000,000 |
| | | | | | | | | $ |
| A | **AUTOMOBILE LIABILITY** ANY AUTO OWNED AUTOS ONLY  SCHEDULED AUTOS  X HIRED AUTOS ONLY  X NON-OWNED AUTOS ONLY | | | 76 SBW UH6733 | 04/01/2016 | 04/01/2017 | COMBINED SINGLE LIMIT (Ea accident) | $2,000,000 |
| | | | | | | | BODILY INJURY (Per person) | $ |
| | | | | | | | BODILY INJURY (Per accident) | $ |
| | | | | | | | PROPERTY DAMAGE (Per accident) | $ |
| A | X UMBRELLA LIAB  X OCCUR  EXCESS LIAB  CLAIMS-MADE  DED X RETENTION $ 10,000 | | | 76 SBW UH6733 | 04/01/2016 | 04/01/2017 | EACH OCCURRENCE | $1,000,000 |
| | | | | | | | AGGREGATE | $1,000,000 |
| | | | | | | | | $ |
| B | **WORKERS COMPENSATION AND EMPLOYERS' LIABILITY** Y/N ANY PROPRIETOR/PARTNER/EXECUTIVE OFFICER/MEMBER EXCLUDED? (Mandatory in NH)  If yes, describe under DESCRIPTION OF OPERATIONS below | N/A | | 76 WEG KU0629 | 02/18/2017 | 02/18/2018 | X PER STATUTE  OTH-ER | |
| | | | | | | | E.L. EACH ACCIDENT | $1,000,000 |
| | | | | | | | E.L. DISEASE - EA EMPLOYEE | $1,000,000 |
| | | | | | | | E.L. DISEASE - POLICY LIMIT | $1,000,000 |

DESCRIPTION OF OPERATIONS / LOCATIONS / VEHICLES (ACORD 101, Additional Remarks Schedule, may be attached if more space is required)

Those usual to the Insured's Operations.

| CERTIFICATE HOLDER | CANCELLATION |
|---|---|
| TULSA INSPECTION RESOURCES 5727 S LEWIS AVE STE 300 TULSA, OK 74105 | SHOULD ANY OF THE ABOVE DESCRIBED POLICIES BE CANCELLED BEFORE THE EXPIRATION DATE THEREOF, NOTICE WILL BE DELIVERED IN ACCORDANCE WITH THE POLICY PROVISIONS.  AUTHORIZED REPRESENTATIVE  *[signature]* |

© 1988-2015 ACORD CORPORATION. All rights reserved.

ACORD 25 (2016/03)    The ACORD name and logo are registered marks of ACORD

# EXHIBIT B

**Sun Mountain, LLC.**
1630 N. Main St. #107
Walnut Creek, CA  94596
(925)817-0942
mike.elmore@sunmountain.us



| BILL TO | SHIP TO | INVOICE F290 |
|---|---|---|
| Tulsa Inspection Resources - PUC, LLC | Tulsa Inspection Resources - PUC, LLC | |
| 5727 S Lewis, Suite 300 | Sun Mountain, LLC. | **DATE** 08/06/2018   **TERMS** Net 30 |
| Tulsa, OK  74105 | 1630 N Main St. #107 | |
| | Walnut Creek, CA 94596 | **DUE DATE** 09/05/2018 |

**SUBCONTRACT NO.**
6.25-7.29, 2018

| DATE | ACTIVITY | QTY | RATE | AMOUNT |
|---|---|---|---|---|
| 08/06/2018 | **LABOR**<br>Andrew De Oliveira | 80 | 83.00 | 6,640.00 |
| 08/06/2018 | **LABOR**<br>Angel Garcia | 192 | 95.00 | 18,240.00 |
| 08/06/2018 | **LABOR**<br>Angelika Mueller-Galbraith | 182.50 | 95.00 | 17,337.50 |
| 08/06/2018 | **LABOR**<br>Arturo Campos | 190 | 113.92 | 21,644.80 |
| 08/06/2018 | **LABOR**<br>Brain Williams | 143 | 95.00 | 13,585.00 |
| 08/06/2018 | **LABOR**<br>Daivd Lucas | 329.50 | 95.00 | 31,302.50 |
| 08/06/2018 | **LABOR**<br>Dillon Forsyth | 202 | 95.00 | 19,190.00 |
| 08/06/2018 | **LABOR**<br>Dustin Lesan | 234.50 | 95.00 | 22,277.50 |
| 08/06/2018 | **LABOR**<br>Eduardo Gomez | 196 | 95.00 | 18,620.00 |
| 08/06/2018 | **LABOR**<br>Eduardo Gomez:5.14-6.24 | 255 | 95.00 | 24,225.00 |
| 08/06/2018 | **LABOR**<br>Gabriel Belai | 222 | 95.00 | 21,090.00 |
| 08/06/2018 | **LABOR**<br>Gabriel Rivas | 200 | 95.00 | 19,000.00 |
| 08/06/2018 | **LABOR**<br>Gustavo Delly Pena | 284 | 113.92 | 32,353.28 |
| 08/06/2018 | **LABOR**<br>Husam Bandak | 211.50 | 113.92 | 24,094.08 |

| DATE | ACTIVITY | QTY | RATE | AMOUNT |
|------|----------|-----|------|--------|
| 08/06/2018 | **LABOR**<br>Jacob Cabral | 170 | 83.00 | 14,110.00 |
| 08/06/2018 | **LABOR**<br>Jacob Cabral:5.22-6.24 | 185 | 83.00 | 15,355.00 |
| 08/06/2018 | **LABOR**<br>James McConchie | 230 | 95.00 | 21,850.00 |
| 08/06/2018 | **LABOR**<br>Jason Ayson | 192 | 113.92 | 21,872.64 |
| 08/06/2018 | **LABOR**<br>Jerald Ervin | 174 | 95.00 | 16,530.00 |
| 08/06/2018 | **LABOR**<br>Jermaine Ervin | 190 | 113.92 | 21,644.80 |
| 08/06/2018 | **LABOR**<br>Jesse Easterly | 231 | 95.00 | 21,945.00 |
| 08/06/2018 | **LABOR**<br>Jim Wu | 234 | 113.92 | 26,657.28 |
| 08/06/2018 | **LABOR**<br>Joshua Marquez | 180 | 95.00 | 17,100.00 |
| 08/06/2018 | **LABOR**<br>Julian Tinamisan | 200 | 95.00 | 19,000.00 |
| 08/06/2018 | **LABOR**<br>Justin Williams | 247 | 95.00 | 23,465.00 |
| 08/06/2018 | **LABOR**<br>Kamal Karajah | 288.50 | 113.92 | 32,865.92 |
| 08/06/2018 | **LABOR**<br>Kyle Devroede | 210 | 95.00 | 19,950.00 |
| 08/06/2018 | **LABOR**<br>Larry Gish | 197 | 95.00 | 18,715.00 |
| 08/06/2018 | **LABOR**<br>Michael Matulis | 200 | 95.00 | 19,000.00 |
| 08/06/2018 | **LABOR**<br>Michael Griffin | 210 | 95.00 | 19,950.00 |
| 08/06/2018 | **LABOR**<br>Patrick Chuchu | 253 | 95.00 | 24,035.00 |
| 08/06/2018 | **LABOR**<br>Peter Johnson | 212 | 113.92 | 24,151.04 |
| 08/06/2018 | **LABOR**<br>Quentin Ham | 203 | 95.00 | 19,285.00 |
| 08/06/2018 | **LABOR**<br>Raymundo Rodriguez | 184 | 95.00 | 17,480.00 |
| 08/06/2018 | **LABOR**<br>Roberto Sacatani | 160 | 95.00 | 15,200.00 |
| 08/06/2018 | **LABOR**<br>Ryan Chuatakoon | 200 | 83.00 | 16,600.00 |
| 08/06/2018 | **LABOR**<br>Ryan Liu | 229 | 95.00 | 21,755.00 |

| DATE | ACTIVITY | QTY | RATE | AMOUNT |
|------|----------|-----|------|--------|
| 08/06/2018 | **LABOR**<br>Ryan McCutcheon | 180 | 95.00 | 17,100.00 |
| 08/06/2018 | **LABOR**<br>Vaai Papalii | 245 | 114.00 | 27,930.00 |
| 08/06/2018 | **LABOR**<br>Wilson Wong | 208.50 | 95.00 | 19,807.50 |
| 08/06/2018 | **LABOR**<br>Ysidor Rodriguez | 221 | 113.92 | 25,176.32 |
| 08/06/2018 | **LABOR**<br>Zackary Fowler | 179 | 95.00 | 17,005.00 |
| 08/06/2018 | **LABOR**<br>Carisa Valerga | 171 | 95.00 | 16,245.00 |

|  |  |
|--|--|
| PAYMENT | 849,778.52 |
| **TOTAL DUE** | **$31,601.64** |

**Sun Mountain, LLC.**
1630 N. Main St. #107
Walnut Creek, CA  94596
(925)817-0942
mike.elmore@sunmountain.us



| BILL TO | SHIP TO |
|---|---|
| Tulsa Inspection Resources - PUC, LLC | Sun Mountain LLC |
| 5727 S Lewis, Suite 300 | 1630 N Main St. #107 |
| Tulsa, OK  74105 | Walnut Creek, CA 94596 |

## INVOICE F291

**DATE** 08/06/2018     **TERMS** Net 30

**DUE DATE** 09/05/2018

**SUBCONTRACT NO.**
6.25-7.29,2018

| DATE | ACTIVITY | QTY | RATE | AMOUNT |
|---|---|---|---|---|
| 08/06/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Angel Garcia | 1 | 1,700.40 | 1,700.40 |
| 08/06/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Arturo Campos | 1 | 1,019.15 | 1,019.15 |
| 08/06/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Brian Williams | 1 | 646.03 | 646.03 |
| 08/06/2018 | **REIMBURSABLE EXPENSE ITEM**<br>David Lucas | 1 | 1,654.47 | 1,654.47 |
| 08/06/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Dillon Forsyth | 1 | 846.39 | 846.39 |
| 08/06/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Dustin Lesan | 1 | 1,935.30 | 1,935.30 |
| 08/06/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Eduardo Gomez: May-July | 1 | 1,676.21 | 1,676.21 |
| 08/06/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Gabriel Belai | 1 | 500.25 | 500.25 |
| 08/06/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Gabriel Rivas | 1 | 517.75 | 517.75 |
| 08/06/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Gustavo Delly Pena | 1 | 1,363.80 | 1,363.80 |
| 08/06/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Husam Bandak | 1 | 402.76 | 402.76 |
| 08/06/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Jacob Cabral: May-July | 1 | 1,903.14 | 1,903.14 |
| 08/06/2018 | **REIMBURSABLE EXPENSE ITEM**<br>James McConchie | 1 | 1,040.95 | 1,040.95 |
| 08/06/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Jason Ayson | 1 | 161.25 | 161.25 |

| DATE | ACTIVITY | QTY | RATE | AMOUNT |
|------|----------|-----|------|--------|
| 08/06/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Jerald Ervin | 1 | 776.08 | 776.08 |
| 08/06/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Jermaine Ervin | 1 | 656.18 | 656.18 |
| 08/06/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Jesse Easterly | 1 | 367.93 | 367.93 |
| 08/06/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Jim Wu | 1 | 1,456.36 | 1,456.36 |
| 08/06/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Joshua Marquez | 1 | 885.63 | 885.63 |
| 08/06/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Julian Tinamisan | 1 | 1,222.46 | 1,222.46 |
| 08/06/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Justin Willaims | 1 | 3,319.05 | 3,319.05 |
| 08/06/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Kamal Karajah | 1 | 4,443.25 | 4,443.25 |
| 08/06/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Kyle Devroede | 1 | 639.29 | 639.29 |
| 08/06/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Larry Gish | 1 | 1,658.44 | 1,658.44 |
| 08/06/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Michael Matulis | 1 | 1,188.10 | 1,188.10 |
| 08/06/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Michael Griffin | 1 | 480.15 | 480.15 |
| 08/06/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Patrick Chuchu | 1 | 840.72 | 840.72 |
| 08/06/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Peter Johnson | 1 | 1,441.53 | 1,441.53 |
| 08/06/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Quentin Ham | 1 | 628.39 | 628.39 |
| 08/06/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Raymundo Rodriguez | 1 | 79.03 | 79.03 |
| 08/06/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Roberto Sacatani | 1 | 647.53 | 647.53 |
| 08/06/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Ryan  Chuatakoon | 1 | 710.14 | 710.14 |
| 08/06/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Ryan Liu | 1 | 1,778.74 | 1,778.74 |
| 08/06/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Ryan McCutcheon | 1 | 850.75 | 850.75 |
| 08/06/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Vaai Papalii | 1 | 814.78 | 814.78 |
| 08/06/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Wilson Wong | 1 | 1,711.52 | 1,711.52 |
| 08/06/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Ysidor Rodriguez | 1 | 107.91 | 107.91 |

| DATE | ACTIVITY | QTY | RATE | AMOUNT |
|------|----------|-----|------|--------|
| 08/06/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Zackary Fowler | 1 | 1,001.26 | 1,001.26 |
| 08/06/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Carisa Valerga | 1 | 30.07 | 30.07 |

| | |
|---|---|
| PAYMENT | 40,390.36 |
| **TOTAL DUE** | **$2,712.78** |

**Sun Mountain, LLC.**
1630 N. Main St. #107
Walnut Creek, CA  94596
(925)817-0942
mike.elmore@sunmountain.us



| BILL TO | SHIP TO | |
|---|---|---|
| Tulsa Inspection Resources - PUC, LLC | Tulsa Inspection Resources - PUC, LLC | **INVOICE F293** |
| 5727 S Lewis, Suite 300 | 1630 N Main St. #107 | **DATE** 08/31/2018   **TERMS** Net 30 |
| Tulsa, OK  74105 | Walnut Creek, CA 94596 | **DUE DATE** 09/30/2018 |

SUBCONTRACT NO.
7.30-8.26, 2018

| DATE | ACTIVITY | QTY | RATE | AMOUNT |
|---|---|---|---|---|
| 08/31/2018 | **LABOR**<br>Andrew De Oliveira | 152 | 83.00 | 12,616.00 |
| 08/31/2018 | **LABOR**<br>Angel Garcia | 169 | 95.00 | 16,055.00 |
| 08/31/2018 | **LABOR**<br>Angelika Mueller-Galbraith | 167.50 | 95.00 | 15,912.50 |
| 08/31/2018 | **LABOR**<br>Brain Williams | 185 | 95.00 | 17,575.00 |
| 08/31/2018 | **LABOR**<br>Carisa Valerga | 174 | 95.00 | 16,530.00 |
| 08/31/2018 | **LABOR**<br>Daivd Lucas | 186 | 95.00 | 17,670.00 |
| 08/31/2018 | **LABOR**<br>Dillon Forsyth | 169 | 95.00 | 16,055.00 |
| 08/31/2018 | **LABOR**<br>Dustin Lesan | 214.50 | 95.00 | 20,377.50 |
| 08/31/2018 | **LABOR**<br>Emma Favela | 160 | 95.00 | 15,200.00 |
| 08/31/2018 | **LABOR**<br>Eduardo Gomez | 182 | 95.00 | 17,290.00 |
| 08/31/2018 | **LABOR**<br>Gabriel Belai | 153 | 95.00 | 14,535.00 |
| 08/31/2018 | **LABOR**<br>Gabriel Rivas | 180 | 95.00 | 17,100.00 |
| 08/31/2018 | **LABOR**<br>Gustavo Delly Pena | 199 | 113.92 | 22,670.08 |
| 08/31/2018 | **LABOR**<br>Husam Bandak | 196 | 113.92 | 22,328.32 |

| DATE | ACTIVITY | QTY | RATE | AMOUNT |
|---|---|---|---|---|
| 08/31/2018 | **LABOR**<br>Jacob Cabral | 170 | 83.00 | 14,110.00 |
| 08/31/2018 | **LABOR**<br>James McConchie | 200 | 95.00 | 19,000.00 |
| 08/31/2018 | **LABOR**<br>Jason Ayson | 160 | 113.92 | 18,227.20 |
| 08/31/2018 | **LABOR**<br>Jerald Ervin | 201 | 95.00 | 19,095.00 |
| 08/31/2018 | **LABOR**<br>Jermaine Ervin | 170 | 113.92 | 19,366.40 |
| 08/31/2018 | **LABOR**<br>Jesse Easterly | 159 | 95.00 | 15,105.00 |
| 08/31/2018 | **LABOR**<br>Jim Wu | 198 | 113.92 | 22,556.16 |
| 08/31/2018 | **LABOR**<br>Joshua Marquez | 180 | 95.00 | 17,100.00 |
| 08/31/2018 | **LABOR**<br>Julian Tinamisan | 180 | 95.00 | 17,100.00 |
| 08/31/2018 | **LABOR**<br>Justin Williams | 200 | 95.00 | 19,000.00 |
| 08/31/2018 | **LABOR**<br>Kamal Karajah | 231 | 113.92 | 26,315.52 |
| 08/31/2018 | **LABOR**<br>Kyle Devroede | 186.50 | 95.00 | 17,717.50 |
| 08/31/2018 | **LABOR**<br>Larry Gish | 172 | 95.00 | 16,340.00 |
| 08/31/2018 | **LABOR**<br>Michael Matulis | 180 | 95.00 | 17,100.00 |
| 08/31/2018 | **LABOR**<br>Michael Fernandez | 89 | 95.00 | 8,455.00 |
| 08/31/2018 | **LABOR**<br>Michael Griffin | 170 | 95.00 | 16,150.00 |
| 08/31/2018 | **LABOR**<br>Miguel Aleman 7.23-8.26 | 241 | 95.00 | 22,895.00 |
| 08/31/2018 | **LABOR**<br>Patrick Chuchu | 211 | 95.00 | 20,045.00 |
| 08/31/2018 | **LABOR**<br>Peter Johnson | 181 | 113.92 | 20,619.52 |
| 08/31/2018 | **LABOR**<br>Quentin Ham | 176 | 95.00 | 16,720.00 |
| 08/31/2018 | **LABOR**<br>Raymundo Rodriguez | 136 | 95.00 | 12,920.00 |
| 08/31/2018 | **LABOR**<br>Roberto Sacatani | 180 | 95.00 | 17,100.00 |
| 08/31/2018 | **LABOR**<br>Ryan Chuatakoon | 144 | 83.00 | 11,952.00 |

| DATE | ACTIVITY | QTY | RATE | AMOUNT |
|------|----------|-----|------|--------|
| 08/31/2018 | **LABOR**<br>Ryan Liu | 190 | 95.00 | 18,050.00 |
| 08/31/2018 | **LABOR**<br>Ryan McCutcheon | 160 | 95.00 | 15,200.00 |
| 08/31/2018 | **LABOR**<br>Vaai Papalii | 88 | 113.92 | 10,024.96 |
| 08/31/2018 | **LABOR**<br>Wilson Wong | 190 | 95.00 | 18,050.00 |
| 08/31/2018 | **LABOR**<br>Ysidor Rodriguez | 170 | 113.92 | 19,366.40 |
| 08/31/2018 | **LABOR**<br>Zackary Fowler | 197.50 | 95.00 | 18,762.50 |

| | |
|---|---|
| PAYMENT | 671,412.84 |
| **TOTAL DUE** | **$74,944.72** |

**Sun Mountain, LLC.**
1630 N. Main St. #107
Walnut Creek, CA  94596
(925)817-0942
mike.elmore@sunmountain.us



| BILL TO | SHIP TO |
|---|---|
| Tulsa Inspection Resources - PUC, LLC | Sun Mountain LLC |
| 5727 S Lewis, Suite 300 | 1630 N Main St. #107 |
| Tulsa, OK  74105 | Walnut Creek, CA 94596 |

## INVOICE F294

**DATE** 08/31/2018   **TERMS** Net 30

**DUE DATE** 09/30/2018

**SUBCONTRACT NO.**
7.30-8.26,2018

| DATE | ACTIVITY | QTY | RATE | AMOUNT |
|---|---|---|---|---|
| 08/31/2018 | REIMBURSABLE EXPENSE ITEM<br>Angel Garcia | 1 | 2,380.56 | 2,380.56 |
| 08/31/2018 | REIMBURSABLE EXPENSE ITEM<br>Brian Williams | 1 | 1,188.28 | 1,188.28 |
| 08/31/2018 | REIMBURSABLE EXPENSE ITEM<br>Carisa Valerga | 1 | 87.84 | 87.84 |
| 08/31/2018 | REIMBURSABLE EXPENSE ITEM<br>David Lucas | 1 | 1,177.37 | 1,177.37 |
| 08/31/2018 | REIMBURSABLE EXPENSE ITEM<br>Dillon Forsyth | 1 | 504.13 | 504.13 |
| 08/31/2018 | REIMBURSABLE EXPENSE ITEM<br>Dustin Lesan | 1 | 2,218.49 | 2,218.49 |
| 08/31/2018 | REIMBURSABLE EXPENSE ITEM<br>Eduardo Gomez | 1 | 1,139.60 | 1,139.60 |
| 08/31/2018 | REIMBURSABLE EXPENSE ITEM<br>Emma Favela | 1 | 76.85 | 76.85 |
| 08/31/2018 | REIMBURSABLE EXPENSE ITEM<br>Gabriel Belai | 1 | 330.42 | 330.42 |
| 08/31/2018 | REIMBURSABLE EXPENSE ITEM<br>Gabriel Rivas | 1 | 503.58 | 503.58 |
| 08/31/2018 | REIMBURSABLE EXPENSE ITEM<br>Gustavo Delly Pena | 1 | 849.88 | 849.88 |
| 08/31/2018 | REIMBURSABLE EXPENSE ITEM<br>Husam Bandak | 1 | 718.31 | 718.31 |
| 08/31/2018 | REIMBURSABLE EXPENSE ITEM<br>Jacob Cabral | 1 | 1,375.97 | 1,375.97 |
| 08/31/2018 | REIMBURSABLE EXPENSE ITEM<br>James McConchie | 1 | 921.05 | 921.05 |

| DATE | ACTIVITY | QTY | RATE | AMOUNT |
|------|----------|-----|------|--------|
| 08/31/2018 | **REIMBURSABLE EXPENSE ITEM** Jason Ayson | 1 | 43.60 | 43.60 |
| 08/31/2018 | **REIMBURSABLE EXPENSE ITEM** Jerald Ervin | 1 | 0.00 | 0.00 |
| 08/31/2018 | **REIMBURSABLE EXPENSE ITEM** Jermaine Ervin | 1 | 825.13 | 825.13 |
| 08/31/2018 | **REIMBURSABLE EXPENSE ITEM** Jesse Easterly | 1 | 576.83 | 576.83 |
| 08/31/2018 | **REIMBURSABLE EXPENSE ITEM** Jim Wu | 1 | 1,584.52 | 1,584.52 |
| 08/31/2018 | **REIMBURSABLE EXPENSE ITEM** Joshua Marquez | 1 | 1,058.10 | 1,058.10 |
| 08/31/2018 | **REIMBURSABLE EXPENSE ITEM** Julian Tinamisan | 1 | 1,123.79 | 1,123.79 |
| 08/31/2018 | **REIMBURSABLE EXPENSE ITEM** Justin Willaims | 1 | 2,260.29 | 2,260.29 |
| 08/31/2018 | **REIMBURSABLE EXPENSE ITEM** Kamal Karajah | 1 | 1,250.83 | 1,250.83 |
| 08/31/2018 | **REIMBURSABLE EXPENSE ITEM** Kyle Devroede | 1 | 491.59 | 491.59 |
| 08/31/2018 | **REIMBURSABLE EXPENSE ITEM** Larry Gish | 1 | 810.42 | 810.42 |
| 08/31/2018 | **REIMBURSABLE EXPENSE ITEM** Michael Matulis | 1 | 970.10 | 970.10 |
| 08/31/2018 | **REIMBURSABLE EXPENSE ITEM** Michael Fernandez | 1 | 0.00 | 0.00 |
| 08/31/2018 | **REIMBURSABLE EXPENSE ITEM** Michael Griffin | 1 | 756.46 | 756.46 |
| 08/31/2018 | **REIMBURSABLE EXPENSE ITEM** Miguel Aleman- 7.23-8.26 | 1 | 625.12 | 625.12 |
| 08/31/2018 | **REIMBURSABLE EXPENSE ITEM** Patrick Chuchu | 1 | 728.12 | 728.12 |
| 08/31/2018 | **REIMBURSABLE EXPENSE ITEM** Peter Johnson | 1 | 985.34 | 985.34 |
| 08/31/2018 | **REIMBURSABLE EXPENSE ITEM** Quentin Ham | 1 | 519.93 | 519.93 |
| 08/31/2018 | **REIMBURSABLE EXPENSE ITEM** Raymundo Rodriguez | 1 | 118.27 | 118.27 |
| 08/31/2018 | **REIMBURSABLE EXPENSE ITEM** Roberto Sacatani | 1 | 771.37 | 771.37 |
| 08/31/2018 | **REIMBURSABLE EXPENSE ITEM** Ryan  Chuatakoon | 1 | 441.45 | 441.45 |
| 08/31/2018 | **REIMBURSABLE EXPENSE ITEM** Ryan Liu | 1 | 1,220.19 | 1,220.19 |
| 08/31/2018 | **REIMBURSABLE EXPENSE ITEM** Ryan McCutcheon | 1 | 977.19 | 977.19 |

| DATE | ACTIVITY | QTY | RATE | AMOUNT |
|------|----------|-----|------|--------|
| 08/31/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Vaai Papalii | 1 | 188.03 | 188.03 |
| 08/31/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Wilson Wong | 1 | 1,964.34 | 1,964.34 |
| 08/31/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Ysidor Rodriguez | 1 | 436.00 | 436.00 |
| 08/31/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Zackary Fowler | 1 | 529.20 | 529.20 |

PAYMENT                                    32,056.88

**TOTAL DUE                         $2,671.66**

**Sun Mountain, LLC.**
1630 N. Main St. #107
Walnut Creek, CA  94596
(925)817-0942
mike.elmore@sunmountain.us



| BILL TO | SHIP TO |
|---|---|
| Tulsa Inspection Resources - PUC, LLC | Tulsa Inspection Resources - PUC, LLC |
| 5727 S Lewis, Suite 300 | 5727 S Lewis, Suite 300 |
| Tulsa, OK  74105 | Tulsa, OK  74105 |

## INVOICE F295

**DATE** 10/05/2018    **TERMS** Net 30

**DUE DATE** 11/04/2018

**SUBCONTRACT NO.**
8.27-9.30, 2018

| DATE | ACTIVITY | QTY | RATE | AMOUNT |
|---|---|---|---|---|
| 10/05/2018 | **LABOR** Andrew De Oliveira | 184 | 83.00 | 15,272.00 |
| 10/05/2018 | **LABOR** Angel Garcia | 228 | 95.00 | 21,660.00 |
| 10/05/2018 | **LABOR** Angelika Mueller-Galbraith | 212.50 | 95.00 | 20,187.50 |
| 10/05/2018 | **LABOR** Brain Williams | 125 | 95.00 | 11,875.00 |
| 10/05/2018 | **LABOR** Carisa Valerga | 209 | 95.00 | 19,855.00 |
| 10/05/2018 | **LABOR** Clint Syltestad | 219 | 83.00 | 18,177.00 |
| 10/05/2018 | **LABOR** Daivd Lucas | 132 | 95.00 | 12,540.00 |
| 10/05/2018 | **LABOR** Dillon Forsyth | 213 | 95.00 | 20,235.00 |
| 10/05/2018 | **LABOR** Dustin Lesan | 211 | 95.00 | 20,045.00 |
| 10/05/2018 | **LABOR** Emma Favela | 190 | 95.00 | 18,050.00 |
| 10/05/2018 | **LABOR** Eduardo Gome: | 222 | 95.00 | 21,090.00 |
| 10/05/2018 | **LABOR** Gabriel Belai | 100 | 95.00 | 9,500.00 |
| 10/05/2018 | **LABOR** Gabriel Rivas | 198 | 95.00 | 18,810.00 |
| 10/05/2018 | **LABOR** Gustavo Delly Pena | 229 | 113.92 | 26,087.68 |

| DATE | ACTIVITY | QTY | RATE | AMOUNT |
|---|---|---|---|---|
| 10/05/2018 | **LABOR** <br> Husam Bandak | 230 | 113.92 | 26,201.60 |
| 10/05/2018 | **LABOR** <br> Jacob Cabral | 190 | 83.00 | 15,770.00 |
| 10/05/2018 | **LABOR** <br> James McConchie | 230 | 95.00 | 21,850.00 |
| 10/05/2018 | **LABOR** <br> Jason Ayson | 199 | 113.92 | 22,670.08 |
| 10/05/2018 | **LABOR** <br> Jerald Ervin | 223 | 95.00 | 21,185.00 |
| 10/05/2018 | **LABOR** <br> Jermaine Ervin | 192 | 113.92 | 21,872.64 |
| 10/05/2018 | **LABOR** <br> Jesse Easterly | 220 | 95.00 | 20,900.00 |
| 10/05/2018 | **LABOR** <br> Jim Wu | 202 | 113.92 | 23,011.84 |
| 10/05/2018 | **LABOR** <br> Joshua Marque: | 253 | 95.00 | 24,035.00 |
| 10/05/2018 | **LABOR** <br> Julian Tinamisan | 125 | 95.00 | 11,875.00 |
| 10/05/2018 | **LABOR** <br> Justin Williams | 202 | 95.00 | 19,190.00 |
| 10/05/2018 | **LABOR** <br> Kamal Karajah | 223 | 113.92 | 25,404.16 |
| 10/05/2018 | **LABOR** <br> Kyle Devroede | 181 | 95.00 | 17,195.00 |
| 10/05/2018 | **LABOR** <br> Larry Gish | 204.50 | 95.00 | 19,427.50 |
| 10/05/2018 | **LABOR** <br> Michael Matulis | 120 | 95.00 | 11,400.00 |
| 10/05/2018 | **LABOR** <br> Michael Fernande: | 226 | 95.00 | 21,470.00 |
| 10/05/2018 | **LABOR** <br> Michael Grizin | 197 | 95.00 | 18,715.00 |
| 10/05/2018 | **LABOR** <br> Miguel Aleman | 251.50 | 95.00 | 23,892.50 |
| 10/05/2018 | **LABOR** <br> Niloozar Nedjadf August 6- September 30 | 305.50 | 95.00 | 29,022.50 |
| 10/05/2018 | **LABOR** <br> Patrick Chuchu | 168 | 95.00 | 15,960.00 |
| 10/05/2018 | **LABOR** <br> Peter Johnson | 230 | 113.92 | 26,201.60 |
| 10/05/2018 | **LABOR** <br> Quentin Ham | 178 | 95.00 | 16,910.00 |
| 10/05/2018 | **LABOR** <br> Raymundo Rodrigue: | 176 | 95.00 | 16,720.00 |

| DATE | ACTIVITY | QTY | RATE | AMOUNT |
|------|----------|-----|------|--------|
| 10/05/2018 | **LABOR**<br>Roberto Sacatani | 170 | 95.00 | 16,150.00 |
| 10/05/2018 | **LABOR**<br>Ryan Chuatakoon | 200 | 83.00 | 16,600.00 |
| 10/05/2018 | **LABOR**<br>Ryan Liu | 130 | 95.00 | 12,350.00 |
| 10/05/2018 | **LABOR**<br>Ryan McCutcheon | 160 | 95.00 | 15,200.00 |
| 10/05/2018 | **LABOR**<br>Vaai Papalii | 228 | 113.92 | 25,973.76 |
| 10/05/2018 | **LABOR**<br>Wilson Wong | 207 | 95.00 | 19,665.00 |
| 10/05/2018 | **LABOR**<br>Ysidor Rodrigue: | 224 | 113.92 | 25,518.08 |
| 10/05/2018 | **LABOR**<br>Zackary Fowler | 206.50 | 95.00 | 19,617.50 |

| | | |
|---|---|---|
| PAYMENT | | 81,510.00 |
| **TOTAL DUE** | | **$793,827.94** |

**Sun Mountain, LLC.**
1630 N. Main St. #107
Walnut Creek, CA  94596
(925)817-0942
mike.elmore@sunmountain.us



| BILL TO | SHIP TO | |
|---|---|---|
| Tulsa Inspection Resources - PUC, LLC | Sun Mountain LLC | **INVOICE F296** |
| 5727 S Lewis, Suite 300 | 1630 N Main St. #107 | |
| Tulsa, OK  74105 | Walnut Creek, CA 94596 | |

**DATE** 10/05/2018    **TERMS** Net 30

**DUE DATE** 11/04/2018

**SUBCONTRACT NO.**
8.27-9.30, 2018

| DATE | ACTIVITY | QTY | RATE | AMOUNT |
|---|---|---|---|---|
| 10/05/2018 | **REIMBURSABLE EXPENSE ITEM** Angel Garcia | 1 | 3,740.88 | 3,740.88 |
| 10/05/2018 | **REIMBURSABLE EXPENSE ITEM** Brian Williams | 1 | 490.50 | 490.50 |
| 10/05/2018 | **REIMBURSABLE EXPENSE ITEM** Carisa Valerga | 1 | 115.54 | 115.54 |
| 10/05/2018 | **REIMBURSABLE EXPENSE ITEM** Clint Svdestay | 1 | 35.43 | 35.43 |
| 10/05/2018 | **REIMBURSABLE EXPENSE ITEM** Dahiy Lucas | 1 | 608.17 | 608.17 |
| 10/05/2018 | **REIMBURSABLE EXPENSE ITEM** Dillon Forsvtz | 1 | 558.63 | 558.63 |
| 10/05/2018 | **REIMBURSABLE EXPENSE ITEM** Dustin Lesan | 1 | 2,299.35 | 2,299.35 |
| 10/05/2018 | **REIMBURSABLE EXPENSE ITEM** Eyuaryo Gome: | 1 | 620.76 | 620.76 |
| 10/05/2018 | **REIMBURSABLE EXPENSE ITEM** Emma Fahela | 1 | 313.92 | 313.92 |
| 10/05/2018 | **REIMBURSABLE EXPENSE ITEM** GaJriel Belai | 1 | 168.15 | 168.15 |
| 10/05/2018 | **REIMBURSABLE EXPENSE ITEM** GaJriel Rihas | 1 | 783.71 | 783.71 |
| 10/05/2018 | **REIMBURSABLE EXPENSE ITEM** Gustaho Dellv Pena | 1 | 817.50 | 817.50 |
| 10/05/2018 | **REIMBURSABLE EXPENSE ITEM** Husam Banyak | 1 | 779.35 | 779.35 |
| 10/05/2018 | **REIMBURSABLE EXPENSE ITEM** bacoJ CaJral | 1 | 651.28 | 651.28 |

| DATE | ACTIVITY | QTY | RATE | AMOUNT |
|---|---|---|---|---|
| 10/05/2018 | **REIMBURSABLE EXPENSE ITEM**<br>bames McConczie | 1 | 1,081.83 | 1,081.83 |
| 10/05/2018 | **REIMBURSABLE EXPENSE ITEM**<br>bason Avson | 1 | 63.22 | 63.22 |
| 10/05/2018 | **REIMBURSABLE EXPENSE ITEM**<br>beraly Erhin | 1 | 307.38 | 307.38 |
| 10/05/2018 | **REIMBURSABLE EXPENSE ITEM**<br>bermaine Erhin | 1 | 763.00 | 763.00 |
| 10/05/2018 | **REIMBURSABLE EXPENSE ITEM**<br>besse Easterlv | 1 | 465.82 | 465.82 |
| 10/05/2018 | **REIMBURSABLE EXPENSE ITEM**<br>bim Wu | 1 | 1,468.92 | 1,468.92 |
| 10/05/2018 | **REIMBURSABLE EXPENSE ITEM**<br>boszua Marque: | 1 | 2,200.38 | 2,200.38 |
| 10/05/2018 | **REIMBURSABLE EXPENSE ITEM**<br>bulian Tinamisan | 1 | 758.64 | 758.64 |
| 10/05/2018 | **REIMBURSABLE EXPENSE ITEM**<br>bustin Willaims | 1 | 1,865.31 | 1,865.31 |
| 10/05/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Kamal Karajaz | 1 | 1,743.24 | 1,743.24 |
| 10/05/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Kvle Dehroeye | 1 | 900.89 | 900.89 |
| 10/05/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Larrv Gisz | 1 | 1,048.04 | 1,048.04 |
| 10/05/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Miczael Matulis | 1 | 741.20 | 741.20 |
| 10/05/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Miczael Gridh | 1 | 561.35 | 561.35 |
| 10/05/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Miguel Aleman | 1 | 13.63 | 13.63 |
| 10/05/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Niloodar Nejayf August 6-SeptemJer 30 | 1 | 1,627.92 | 1,627.92 |
| 10/05/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Patrick Czuczu | 1 | 755.37 | 755.37 |
| 10/05/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Peter boznson | 1 | 1,547.14 | 1,547.14 |
| 10/05/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Quentin Ham | 1 | 418.56 | 418.56 |
| 10/05/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Ravmunyo Royrigue: | 1 | 156.42 | 156.42 |
| 10/05/2018 | **REIMBURSABLE EXPENSE ITEM**<br>RoJerto Sacatani | 1 | 687.98 | 687.98 |
| 10/05/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Rvan Czuatakoon | 1 | 808.24 | 808.24 |
| 10/05/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Rvan Liu | 1 | 1,068.98 | 1,068.98 |

| DATE | ACTIVITY | QTY | RATE | AMOUNT |
|------|----------|-----|------|--------|
| 10/05/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Rvan McCutczeon | 1 | 656.18 | 656.18 |
| 10/05/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Vaai Papalii | 1 | 619.12 | 619.12 |
| 10/05/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Wilson Wong | 1 | 3,019.16 | 3,019.16 |
| 10/05/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Ysiyor Royrigue: | 1 | 365.15 | 365.15 |
| 10/05/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Zackarv Fowler | 1 | 596.78 | 596.78 |

| | | |
|---|---|---|
| PAYMENT | | 1,649.73 |

| | |
|---|---|
| **TOTAL DUE** | **$36,643.29** |

**Sun Mountain, LLC.**
1630 N. Main St. #107
Walnut Creek, CA  94596
(925)817-0942
mike.elmore@sunmountain.us



| BILL TO | SHIP TO |
|---------|---------|
| Tulsa Inspection Resources - PUC, LLC | Tulsa Inspection Resources - PUC, LLC |
| 5727 S Lewis, Suite 300 | 5727 S Lewis, Suite 300 |
| Tulsa, OK  74105 | Tulsa, OK  74105 |

## INVOICE F297

**DATE** 11/02/2018    **TERMS** Net 30

**DUE DATE** 12/02/2018

**SUBCONTRACT NO.**
10.1-10.28, 2018

| DATE | ACTIVITY | QTY | RATE | AMOUNT |
|------|----------|-----|------|--------|
| 11/02/2018 | **LABOR** Andrew De Oliveira | 157 | 98.00 | 15,386.00 |
| 11/02/2018 | **LABOR** Angel Garcia | 162 | 106.00 | 17,172.00 |
| 11/02/2018 | **LABOR** Angelika Mueller-Galbraith | 19.50 | 106.00 | 2,067.00 |
| 11/02/2018 | **LABOR** Carisa Valerga | 126 | 106.00 | 13,356.00 |
| 11/02/2018 | **LABOR** Clint Syzestad | 141 | 98.00 | 13,818.00 |
| 11/02/2018 | **LABOR** Dillon Forsyth | 185 | 106.00 | 19,610.00 |
| 11/02/2018 | **LABOR** Dustin Lesan | 218 | 106.00 | 23,108.00 |
| 11/02/2018 | **LABOR** Eduardo Gome: | 197 | 106.00 | 20,882.00 |
| 11/02/2018 | **LABOR** Emma Favela | 160 | 106.00 | 16,960.00 |
| 11/02/2018 | **LABOR** Fermin Timothee | 156 | 106.00 | 16,536.00 |
| 11/02/2018 | **LABOR** Gabriel Rivas | 145 | 106.00 | 15,370.00 |
| 11/02/2018 | **LABOR** Gustavo Delly Pena | 114 | 116.00 | 13,224.00 |
| 11/02/2018 | **LABOR** Henry TranJ9/10-10/28 | 280 | 106.00 | 29,680.00 |
| 11/02/2018 | **LABOR** Husam Bandak | 200 | 116.00 | 23,200.00 |

| DATE | ACTIVITY | QTY | RATE | AMOUNT |
|------|----------|-----|------|--------|
| 11/02/2018 | **LABOR**<br>qacob Cabral | 156 | 98.00 | 15,288.00 |
| 11/02/2018 | **LABOR**<br>qames McConchie | 180 | 106.00 | 19,080.00 |
| 11/02/2018 | **LABOR**<br>qason Ayson | 162 | 116.00 | 18,792.00 |
| 11/02/2018 | **LABOR**<br>qerald Ervin | 190 | 106.00 | 20,140.00 |
| 11/02/2018 | **LABOR**<br>qermaine Ervin | 160 | 116.00 | 18,560.00 |
| 11/02/2018 | **LABOR**<br>qesse Easterly | 217 | 106.00 | 23,002.00 |
| 11/02/2018 | **LABOR**<br>qim Wu | 238.50 | 116.00 | 27,666.00 |
| 11/02/2018 | **LABOR**<br>qoshua Marj ue: | 180 | 106.00 | 19,080.00 |
| 11/02/2018 | **LABOR**<br>qustin Williams | 174 | 106.00 | 18,444.00 |
| 11/02/2018 | **LABOR**<br>Kamal Karafah | 251 | 116.00 | 29,116.00 |
| 11/02/2018 | **LABOR**<br>Kristen Elliott | 156 | 106.00 | 16,536.00 |
| 11/02/2018 | **LABOR**<br>Michael Matulis | 160 | 106.00 | 16,960.00 |
| 11/02/2018 | **LABOR**<br>Michael Fernande: | 144 | 106.00 | 15,264.00 |
| 11/02/2018 | **LABOR**<br>Miguel Aleman | 247 | 106.00 | 26,182.00 |
| 11/02/2018 | **LABOR**<br>Niloozar Nedfad | 210.50 | 106.00 | 22,313.00 |
| 11/02/2018 | **LABOR**<br>Peter qohnson | 183 | 116.00 | 21,228.00 |
| 11/02/2018 | **LABOR**<br>Raymundo Rodrigue: | 136 | 106.00 | 14,416.00 |
| 11/02/2018 | **LABOR**<br>Ryan Chuatakoon | 160 | 98.00 | 15,680.00 |
| 11/02/2018 | **LABOR**<br>Ryan McCutcheon | 160 | 106.00 | 16,960.00 |
| 11/02/2018 | **LABOR**<br>Vaai Papalii | 190 | 116.00 | 22,040.00 |
| 11/02/2018 | **LABOR**<br>Wilson Wong | 180 | 106.00 | 19,080.00 |
| 11/02/2018 | **LABOR**<br>Ysidor Rodrigue: | 162 | 116.00 | 18,792.00 |
| 11/02/2018 | **LABOR**<br>Zackary Fowler | 261.50 | 106.00 | 27,719.00 |

| TOTAL DUE | $702,707.00 |

**Sun Mountain, LLC.**
1630 N. Main St. #107
Walnut Creek, CA  94596
(925)817-0942
mike.elmore@sunmountain.us



| | |
|---|---|
| **BILL TO** | **SHIP TO** |
| Tulsa Inspection Resources - PUC, LLC | Sun Mountain LLC |
| 5727 S Lewis, Suite 300 | 1630 N Main St. #107 |
| Tulsa, OK  74105 | Walnut Creek, CA 94596 |

## INVOICE F298

**DATE** 11/02/2018     **TERMS** Net 30

**DUE DATE** 12/02/2018

**SUBCONTRACT NO.**
10.1-10.28, 2018

| DATE | ACTIVITY | QTY | RATE | AMOUNT |
|---|---|---|---|---|
| 11/02/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Angel Garcia | 1 | 2,720.64 | 2,720.64 |
| 11/02/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Clint Svdestay | 1 | 162.41 | 162.41 |
| 11/02/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Dillon Forsvth | 1 | 432.19 | 432.19 |
| 11/02/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Dustin Lesan | 1 | 1,427.36 | 1,427.36 |
| 11/02/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Eyuaryo Gomez | 1 | 534.10 | 534.10 |
| 11/02/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Emma Fabela | 1 | 5.00 | 5.00 |
| 11/02/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Fermin Timothee | 1 | 1,449.68 | 1,449.68 |
| 11/02/2018 | **REIMBURSABLE EXPENSE ITEM**<br>GaJriel Ribas | 1 | 486.14 | 486.14 |
| 11/02/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Gustabo Dellv Pena | 1 | 381.50 | 381.50 |
| 11/02/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Husam Banyak | 1 | 562.44 | 562.44 |
| 11/02/2018 | **REIMBURSABLE EXPENSE ITEM**<br>qacoJ CaJral | 1 | 692.70 | 692.70 |
| 11/02/2018 | **REIMBURSABLE EXPENSE ITEM**<br>qames McConchie | 1 | 667.08 | 667.08 |
| 11/02/2018 | **REIMBURSABLE EXPENSE ITEM**<br>qason Avson | 1 | 174.40 | 174.40 |
| 11/02/2018 | **REIMBURSABLE EXPENSE ITEM**<br>qeraly Erbin | 1 | 1,393.02 | 1,393.02 |

| DATE | ACTIVITY | QTY | RATE | AMOUNT |
|---|---|---|---|---|
| 11/02/2018 | **REIMBURSABLE EXPENSE ITEM** <br> qermaine Erbin | 1 | 758.64 | 758.64 |
| 11/02/2018 | **REIMBURSABLE EXPENSE ITEM** <br> qesse Easterlv | 1 | 724.31 | 724.31 |
| 11/02/2018 | **REIMBURSABLE EXPENSE ITEM** <br> qim Wu | 1 | 2,275.33 | 2,275.33 |
| 11/02/2018 | **REIMBURSABLE EXPENSE ITEM** <br> qoshua Marj uez | 1 | 1,867.98 | 1,867.98 |
| 11/02/2018 | **REIMBURSABLE EXPENSE ITEM** <br> qustin Willaims | 1 | 1,022.42 | 1,022.42 |
| 11/02/2018 | **REIMBURSABLE EXPENSE ITEM** <br> Kamal Karafah | 1 | 1,812.48 | 1,812.48 |
| 11/02/2018 | **REIMBURSABLE EXPENSE ITEM** <br> Michael Matulis | 1 | 893.80 | 893.80 |
| 11/02/2018 | **REIMBURSABLE EXPENSE ITEM** <br> Niloodar Nefay | 1 | 990.58 | 990.58 |
| 11/02/2018 | **REIMBURSABLE EXPENSE ITEM** <br> Peter qohnson | 1 | 1,311.28 | 1,311.28 |
| 11/02/2018 | **REIMBURSABLE EXPENSE ITEM** <br> Ravmunyo Royriguez | 1 | 70.85 | 70.85 |
| 11/02/2018 | **REIMBURSABLE EXPENSE ITEM** <br> Rvan  Chuatakoon | 1 | 605.50 | 605.50 |
| 11/02/2018 | **REIMBURSABLE EXPENSE ITEM** <br> Rvan McCutcheon | 1 | 670.35 | 670.35 |
| 11/02/2018 | **REIMBURSABLE EXPENSE ITEM** <br> Vaai Papalii | 1 | 550.45 | 550.45 |
| 11/02/2018 | **REIMBURSABLE EXPENSE ITEM** <br> Wilson Wong | 1 | 1,297.53 | 1,297.53 |
| 11/02/2018 | **REIMBURSABLE EXPENSE ITEM** <br> Ysiyor Royriguez | 1 | 323.73 | 323.73 |
| 11/02/2018 | **REIMBURSABLE EXPENSE ITEM** <br> Zackarv Fowler | 1 | 928.68 | 928.68 |

| TOTAL DUE | **$27,192.57** |
|---|---|

**Sun Mountain, LLC.**
1630 N. Main St. #107
Walnut Creek, CA  94596
(925)817-0942
mike.elmore@sunmountain.us



| BILL TO | SHIP TO |
|---|---|
| Tulsa Inspection Resources - PUC, LLC | Tulsa Inspection Resources - PUC, LLC |
| 5727 S Lewis, Suite 300 | 5727 S Lewis, Suite 300 |
| Tulsa, OK  74105 | Tulsa, OK  74105 |

## INVOICE F301

**DATE** 11/30/2018   **TERMS** Net 30

**DUE DATE** 12/30/2018

**SUBCONTRACT NO.**
10.29-11.25, 2018

| DATE | ACTIVITY | QTY | RATE | AMOUNT |
|---|---|---|---|---|
| 11/30/2018 | **LABOR** Andrew De Oliveira | 112 | 98.00 | 10,976.00 |
| 11/30/2018 | **LABOR** Angel Garcia | 172 | 106.00 | 18,232.00 |
| 11/30/2018 | **LABOR** Carisa Valerga | 154 | 106.00 | 16,324.00 |
| 11/30/2018 | **LABOR** Clint Sbltestad | 227 | 98.00 | 22,246.00 |
| 11/30/2018 | **LABOR** Dillon Forsbty | 144 | 106.00 | 15,264.00 |
| 11/30/2018 | **LABOR** Dustin Lesan | 121 | 106.00 | 12,826.00 |
| 11/30/2018 | **LABOR** Eduardo Gomez | 175 | 106.00 | 18,550.00 |
| 11/30/2018 | **LABOR** Emma Favela | 160 | 106.00 | 16,960.00 |
| 11/30/2018 | **LABOR** Fermin Timotyee | 167 | 106.00 | 17,702.00 |
| 11/30/2018 | **LABOR** Ga: riel Rivas | 186 | 106.00 | 19,716.00 |
| 11/30/2018 | **LABOR** Gustavo Dellb Pena | 196 | 116.00 | 22,736.00 |
| 11/30/2018 | **LABOR** Henrb Tran | 160 | 106.00 | 16,960.00 |
| 11/30/2018 | **LABOR** Husam Bandak | 180 | 116.00 | 20,880.00 |
| 11/30/2018 | **LABOR** Jaco:  Ca: ral | 162 | 98.00 | 15,876.00 |

| DATE | ACTIVITY | QTY | RATE | AMOUNT |
|---|---|---|---|---|
| 11/30/2018 | **LABOR**<br>James McConcyie | 180 | 106.00 | 19,080.00 |
| 11/30/2018 | **LABOR**<br>Jason Abson | 140.50 | 116.00 | 16,298.00 |
| 11/30/2018 | **LABOR**<br>Jerald Ervin | 170 | 106.00 | 18,020.00 |
| 11/30/2018 | **LABOR**<br>Jermaine Ervin | 140 | 116.00 | 16,240.00 |
| 11/30/2018 | **LABOR**<br>Jesse Easterlb | 187 | 106.00 | 19,822.00 |
| 11/30/2018 | **LABOR**<br>Jim Wu | 197.50 | 116.00 | 22,910.00 |
| 11/30/2018 | **LABOR**<br>Josyua Marquez | 160 | 106.00 | 16,960.00 |
| 11/30/2018 | **LABOR**<br>Justin Williams | 62 | 106.00 | 6,572.00 |
| 11/30/2018 | **LABOR**<br>Kamal Karajay | 222 | 116.00 | 25,752.00 |
| 11/30/2018 | **LABOR**<br>Kristen Elliott | 138 | 106.00 | 14,628.00 |
| 11/30/2018 | **LABOR**<br>Micyael Matulis | 150 | 106.00 | 15,900.00 |
| 11/30/2018 | **LABOR**<br>Micyael Fernandez | 190.50 | 106.00 | 20,193.00 |
| 11/30/2018 | **LABOR**<br>Miguel Aleman | 198 | 106.00 | 20,988.00 |
| 11/30/2018 | **LABOR**<br>Nalisa Jumayanf 8/6-9/30 | 302.50 | 95.00 | 28,737.50 |
| 11/30/2018 | **LABOR**<br>Nalisa Jumayanf 10/1-11/25 | 299.50 | 106.00 | 31,747.00 |
| 11/30/2018 | **LABOR**<br>Niloohar Nedjad | 209 | 106.00 | 22,154.00 |
| 11/30/2018 | **LABOR**<br>Oscar Riveraf 9/10- 9/30 | 120 | 95.00 | 11,400.00 |
| 11/30/2018 | **LABOR**<br>Oscar Riveraf10/1-11/25 | 296 | 106.00 | 31,376.00 |
| 11/30/2018 | **LABOR**<br>Peter Joynson | 115 | 116.00 | 13,340.00 |
| 11/30/2018 | **LABOR**<br>Ranjeet Bobalf 8/27 -9/30 | 192 | 95.00 | 18,240.00 |
| 11/30/2018 | **LABOR**<br>Ranjeet Bobalf 10/1-11/25 | 304 | 106.00 | 32,224.00 |
| 11/30/2018 | **LABOR**<br>Rabmundo Rodriguez | 144 | 106.00 | 15,264.00 |
| 11/30/2018 | **LABOR**<br>Rban Cyuatakoon | 151 | 98.00 | 14,798.00 |

| DATE | ACTIVITY | QTY | RATE | AMOUNT |
|------|----------|-----|------|--------|
| 11/30/2018 | **LABOR**<br>Rban McCutcyeon | 150 | 106.00 | 15,900.00 |
| 11/30/2018 | **LABOR**<br>Vaai Papalii | 157 | 116.00 | 18,212.00 |
| 11/30/2018 | **LABOR**<br>Wilson Wong | 173.50 | 106.00 | 18,391.00 |
| 11/30/2018 | **LABOR**<br>Ysidor Rodriguez | 162 | 116.00 | 18,792.00 |
| 11/30/2018 | **LABOR**<br>Zackarb Fowler | 174.50 | 106.00 | 18,497.00 |

| TOTAL DUE | **$787,683.50** |
|-----------|-----------------|

**Sun Mountain, LLC.**
1630 N. Main St. #107
Walnut Creek, CA  94596
(925)817-0942
mike.elmore@sunmountain.us



| BILL TO | SHIP TO | |
|---------|---------|---|
| Tulsa Inspection Resources - PUC, LLC | Sun Mountain LLC | **INVOICE F302** |
| 5727 S Lewis, Suite 300 | 1630 N Main St. #107 | **DATE** 11/30/2018   **TERMS** Net 30 |
| Tulsa, OK  74105 | Walnut Creek, CA 94596 | **DUE DATE** 12/30/2018 |

SUBCONTRACT NO.
10.29-11.25, 2018

| DATE | ACTIVITY | QTY | RATE | AMOUNT |
|------|----------|-----|------|--------|
| 11/30/2018 | REIMBURSABLE EXPENSE ITEM<br>Angel Garcia | 1 | 2,824.74 | 2,824.74 |
| 11/30/2018 | REIMBURSABLE EXPENSE ITEM<br>Carisa Valerga | 1 | 71.94 | 71.94 |
| 11/30/2018 | REIMBURSABLE EXPENSE ITEM<br>Clint Svdestay | 1 | 51.78 | 51.78 |
| 11/30/2018 | REIMBURSABLE EXPENSE ITEM<br>Dillon Forsvth | 1 | 529.20 | 529.20 |
| 11/30/2018 | REIMBURSABLE EXPENSE ITEM<br>Dustin Lesan | 1 | 683.43 | 683.43 |
| 11/30/2018 | REIMBURSABLE EXPENSE ITEM<br>Eyuaryo Gomez | 1 | 515.03 | 515.03 |
| 11/30/2018 | REIMBURSABLE EXPENSE ITEM<br>Fermin Timothee | 1 | 2,093.75 | 2,093.75 |
| 11/30/2018 | REIMBURSABLE EXPENSE ITEM<br>Ga: riel RiJas | 1 | 480.15 | 480.15 |
| 11/30/2018 | REIMBURSABLE EXPENSE ITEM<br>GustaJo Dellv Pena | 1 | 1,025.90 | 1,025.90 |
| 11/30/2018 | REIMBURSABLE EXPENSE ITEM<br>Husam Banyak | 1 | 454.53 | 454.53 |
| 11/30/2018 | REIMBURSABLE EXPENSE ITEM<br>baco:  Ca: ral | 1 | 839.30 | 839.30 |
| 11/30/2018 | REIMBURSABLE EXPENSE ITEM<br>bames McConchie | 1 | 559.17 | 559.17 |
| 11/30/2018 | REIMBURSABLE EXPENSE ITEM<br>bason Avson | 1 | 187.86 | 187.86 |
| 11/30/2018 | REIMBURSABLE EXPENSE ITEM<br>beraly ErJin | 1 | 1,462.24 | 1,462.24 |

| DATE | ACTIVITY | QTY | RATE | AMOUNT |
|------|----------|-----|------|--------|
| 11/30/2018 | **REIMBURSABLE EXPENSE ITEM**<br>bermaine ErJin | 1 | 436.00 | 436.00 |
| 11/30/2018 | **REIMBURSABLE EXPENSE ITEM**<br>besse Easterlv | 1 | 1,128.81 | 1,128.81 |
| 11/30/2018 | **REIMBURSABLE EXPENSE ITEM**<br>bim Wu | 1 | 969.65 | 969.65 |
| 11/30/2018 | **REIMBURSABLE EXPENSE ITEM**<br>boshua Marquez | 1 | 1,564.09 | 1,564.09 |
| 11/30/2018 | **REIMBURSABLE EXPENSE ITEM**<br>bustin Willaims | 1 | 742.29 | 742.29 |
| 11/30/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Kamal Karajah | 1 | 1,835.74 | 1,835.74 |
| 11/30/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Michael Matulis | 1 | 903.61 | 903.61 |
| 11/30/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Miguel Aleman | 1 | 1,194.24 | 1,194.24 |
| 11/30/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Nadsa bumahanf August - NoJem: er | 1 | 722.67 | 722.67 |
| 11/30/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Niloodar Nejay | 1 | 752.41 | 752.41 |
| 11/30/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Peter bohnson | 1 | 530.29 | 530.29 |
| 11/30/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Ravmunyo Royriguez | 1 | 151.51 | 151.51 |
| 11/30/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Rvan  Chuatakoon | 1 | 307.93 | 307.93 |
| 11/30/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Rvan McCutcheon | 1 | 515.03 | 515.03 |
| 11/30/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Vaai Papalii | 1 | 420.20 | 420.20 |
| 11/30/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Wilson Wong | 1 | 1,958.27 | 1,958.27 |
| 11/30/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Ysiyor Royriguez | 1 | 106.28 | 106.28 |
| 11/30/2018 | **REIMBURSABLE EXPENSE ITEM**<br>Zackarv Fowler | 1 | 434.55 | 434.55 |

| TOTAL DUE | **$26,452.59** |
|-----------|----------------|

**Sun Mountain, LLC.**
1630 N. Main St. #107
Walnut Creek, CA  94596
(925)817-0942
mike.elmore@sunmountain.us



| BILL TO | SHIP TO |
|---|---|
| Tulsa Inspection Resources - PUC, LLC | Tulsa Inspection Resources - PUC, LLC |
| 5727 S Lewis, Suite 300 | 5727 S Lewis, Suite 300 |
| Tulsa, OK  74105 | Tulsa, OK  74105 |

## INVOICE F307

**DATE** 01/09/2019   **TERMS** Net 30

**DUE DATE** 02/08/2019

**SUBCONTRACT NO.**
11.26 - 12.30, 2018

| DATE | ACTIVITY | QTY | RATE | AMOUNT |
|---|---|---|---|---|
| 01/09/2019 | **Labor** Andrew De Oliveira | 178 | 98.00 | 17,444.00 |
| 01/09/2019 | **Labor** Angel Garcia | 200 | 106.00 | 21,200.00 |
| 01/09/2019 | **Labor** Cheri Ramirez | 191 | 106.00 | 20,246.00 |
| 01/09/2019 | **Labor** Clint Syftestad | 217 | 98.00 | 21,266.00 |
| 01/09/2019 | **Labor** Dillon Forsyth | 241 | 106.00 | 25,546.00 |
| 01/09/2019 | **Labor** Eduardo Gomez | 237 | 106.00 | 25,122.00 |
| 01/09/2019 | **Labor** Emma Favela | 170 | 106.00 | 18,020.00 |
| 01/09/2019 | **Labor** Fermin Timothee | 222 | 106.00 | 23,532.00 |
| 01/09/2019 | **Labor** Gabriel Rivas | 218 | 106.00 | 23,108.00 |
| 01/09/2019 | **Labor** Gustavo Delly Pena | 242 | 116.00 | 28,072.00 |
| 01/09/2019 | **Labor** Henry Tran | 170 | 106.00 | 18,020.00 |
| 01/09/2019 | **Labor** Husam Bandak | 238 | 116.00 | 27,608.00 |
| 01/09/2019 | **Labor** Jacob Cabral | 43 | 98.00 | 4,214.00 |
| 01/09/2019 | **Labor** James McConchie | 240 | 106.00 | 25,440.00 |

| DATE | ACTIVITY | QTY | RATE | AMOUNT |
|------|----------|-----|------|--------|
| 01/09/2019 | **Labor**<br>Jason Ayson | 198.50 | 116.00 | 23,026.00 |
| 01/09/2019 | **Labor**<br>Jerald Ervin | 272 | 106.00 | 28,832.00 |
| 01/09/2019 | **Labor**<br>Jermaine Ervin | 190 | 116.00 | 22,040.00 |
| 01/09/2019 | **Labor**<br>Jesse Easterly | 270 | 106.00 | 28,620.00 |
| 01/09/2019 | **Labor**<br>Jim Wu | 237.50 | 116.00 | 27,550.00 |
| 01/09/2019 | **Labor**<br>Joshua Marquez | 203 | 106.00 | 21,518.00 |
| 01/09/2019 | **Labor**<br>Kamal Karajah | 312 | 116.00 | 36,192.00 |
| 01/09/2019 | **Labor**<br>Kristen Elliott | 179 | 106.00 | 18,974.00 |
| 01/09/2019 | **Labor**<br>Michael Fernandez | 205 | 106.00 | 21,730.00 |
| 01/09/2019 | **Labor**<br>Michael Matulis | 180 | 106.00 | 19,080.00 |
| 01/09/2019 | **Labor**<br>Miguel Aleman | 413 | 106.00 | 43,778.00 |
| 01/09/2019 | **Labor**<br>Nafisa Jumahan | 168.50 | 106.00 | 17,861.00 |
| 01/09/2019 | **Labor**<br>Niloofar Nedjad | 276 | 106.00 | 29,256.00 |
| 01/09/2019 | **Labor**<br>Oscar Rivera | 135 | 106.00 | 14,310.00 |
| 01/09/2019 | **Labor**<br>Peter Johnson | 240 | 116.00 | 27,840.00 |
| 01/09/2019 | **Labor**<br>Ranjeet Boyal | 192 | 106.00 | 20,352.00 |
| 01/09/2019 | **Labor**<br>Raymundo Rodriguez | 192 | 106.00 | 20,352.00 |
| 01/09/2019 | **Labor**<br>Roberto Roman: 11/5 - 12/30 | 285 | 116.00 | 33,060.00 |
| 01/09/2019 | **Labor**<br>Ryan Chuatakoon | 200 | 98.00 | 19,600.00 |
| 01/09/2019 | **Labor**<br>Ryan McCutcheon | 170 | 106.00 | 18,020.00 |
| 01/09/2019 | **Labor**<br>Tammi Barker: 11/13 -12/30 | 248.50 | 106.00 | 26,341.00 |
| 01/09/2019 | **Labor**<br>Vaai Papalii | 182 | 116.00 | 21,112.00 |
| 01/09/2019 | **Labor**<br>Wilson Wong | 267.50 | 106.00 | 28,355.00 |

| DATE | ACTIVITY | QTY | RATE | AMOUNT |
|------|----------|-----|------|--------|
| 01/09/2019 | **Labor**<br>Ysidor Rodriguez | 221 | 116.00 | 25,636.00 |

| TOTAL DUE | $892,273.00 |
|-----------|-------------|

**Sun Mountain, LLC.**
1630 N. Main St. #107
Walnut Creek, CA  94596
(925)817-0942
mike.elmore@sunmountain.us



| BILL TO | SHIP TO | **INVOICE F308** |
|---|---|---|
| Tulsa Inspection Resources - PUC, LLC | Sun Mountain LLC | |
| 5727 S Lewis, Suite 300 | 1630 N Main St. #107 | **DATE** 01/09/2019   **TERMS** Net 30 |
| Tulsa, OK  74105 | Walnut Creek, CA 94596 | |
| | | **DUE DATE** 02/08/2019 |

**SUBCONTRACT NO.**
11.26-12.30, 2018

| DATE | ACTIVITY | QTY | RATE | AMOUNT |
|---|---|---|---|---|
| 01/09/2019 | **Reimbursable Expense Item**<br>Angel Garcia | 1 | 2,720.64 | 2,720.64 |
| 01/09/2019 | **Reimbursable Expense Item**<br>Clint Syftestad | 1 | 87.20 | 87.20 |
| 01/09/2019 | **Reimbursable Expense Item**<br>Dillon Forsyth | 1 | 1,176.11 | 1,176.11 |
| 01/09/2019 | **Reimbursable Expense Item**<br>Eduardo Gomez | 1 | 447.45 | 447.45 |
| 01/09/2019 | **Reimbursable Expense Item**<br>Fermin Timothee | 1 | 3,461.27 | 3,461.27 |
| 01/09/2019 | **Reimbursable Expense Item**<br>Gabriel Rivas | 1 | 639.83 | 639.83 |
| 01/09/2019 | **Reimbursable Expense Item**<br>Gustavo Delly Pena | 1 | 964.65 | 964.65 |
| 01/09/2019 | **Reimbursable Expense Item**<br>Husam Bandak | 1 | 656.18 | 656.18 |
| 01/09/2019 | **Reimbursable Expense Item**<br>Jacob Cabral | 1 | 244.71 | 244.71 |
| 01/09/2019 | **Reimbursable Expense Item**<br>James McConchie | 1 | 634.38 | 634.38 |
| 01/09/2019 | **Reimbursable Expense Item**<br>Jason Ayson | 1 | 276.70 | 276.70 |
| 01/09/2019 | **Reimbursable Expense Item**<br>Jerald Ervin | 1 | 1,945.11 | 1,945.11 |
| 01/09/2019 | **Reimbursable Expense Item**<br>Jermaine Ervin | 1 | 545.00 | 545.00 |
| 01/09/2019 | **Reimbursable Expense Item**<br>Jesse Easterly | 1 | 541.73 | 541.73 |

| DATE | ACTIVITY | QTY | RATE | AMOUNT |
|---|---|---|---|---|
| 01/09/2019 | **Reimbursable Expense Item**<br>Jim Wu | 1 | 1,363.59 | 1,363.59 |
| 01/09/2019 | **Reimbursable Expense Item**<br>Joshua Marquez | 1 | 1,507.59 | 1,507.59 |
| 01/09/2019 | **Reimbursable Expense Item**<br>Kamal Karajah | 1 | 2,174.55 | 2,174.55 |
| 01/09/2019 | **Reimbursable Expense Item**<br>Michael Matulis | 1 | 844.75 | 844.75 |
| 01/09/2019 | **Reimbursable Expense Item**<br>Miguel Aleman | 1 | 2,960.99 | 2,960.99 |
| 01/09/2019 | **Reimbursable Expense Item**<br>Nafisa Jumahan | 1 | 196.20 | 196.20 |
| 01/09/2019 | **Reimbursable Expense Item**<br>Niloofar Nejad | 1 | 912.56 | 912.56 |
| 01/09/2019 | **Reimbursable Expense Item**<br>Peter Johnson | 1 | 1,051.85 | 1,051.85 |
| 01/09/2019 | **Reimbursable Expense Item**<br>Raymundo Rodriguez | 1 | 189.12 | 189.12 |
| 01/09/2019 | **Reimbursable Expense Item**<br>Ryan  Chuatakoon | 1 | 247.98 | 247.98 |
| 01/09/2019 | **Reimbursable Expense Item**<br>Ryan McCutcheon | 1 | 584.24 | 584.24 |
| 01/09/2019 | **Reimbursable Expense Item**<br>Vaai Papalii | 1 | 349.35 | 349.35 |
| 01/09/2019 | **Reimbursable Expense Item**<br>Wilson Wong | 1 | 2,031.39 | 2,031.39 |
| 01/09/2019 | **Reimbursable Expense Item**<br>Ysidor Rodriguez | 1 | 201.11 | 201.11 |

| TOTAL DUE | **$28,956.23** |
|---|---|

**Sun Mountain, LLC.**
1630 N. Main St. #107
Walnut Creek, CA  94596
(925)817-0942
mike.elmore@sunmountain.us



**BILL TO**
Tulsa Inspection Resources -
PUC, LLC
5727 S Lewis, Suite 300
Tulsa, OK  74105

**SHIP TO**
Tulsa Inspection Resources -
PUC, LLC
Sun Mountain, LLC
1630 N Main St. #107
Walnut Creek, CA 94596

## INVOICE F310

**DATE** 01/18/2019   **TERMS** Net 30

**DUE DATE** 02/17/2019

**SUBCONTRACT NO.**
10.1.2018 12.30.2018

| DATE | ACTIVITY | QTY | RATE | AMOUNT |
|------|----------|-----|------|--------|
| 01/18/2019 | **Labor**<br>James Krijgsman : 11.5-12.30, 2018 | 435.50 | 116.00 | 50,518.00 |
| 01/18/2019 | **Labor**<br>Timothy Marskey: 10.29 12.30, 2018 | 350 | 106.00 | 37,100.00 |

| TOTAL DUE | **$87,618.00** |
|-----------|----------------|